Angela D. MATHENY, Individually and as Mother and Next Friend of Traneil L. Benjamin, Jarvaris T. Ford, and Tierra S. Matheny, Minors, Plaintiffs,

v.

Jimmy L. BOATRIGHT, Sheriff, Jeff Davis County, Georgia, a Political Subdivision of the State of Georgia; Officer Mark Smith, Officer Frankie L. Williams, Officer Curtis Harper, and Officer Paul McNeal, Defendants.

Civil Action No. CV295–170.

United States District Court,
S.D. Georgia,
Brunswick Division.

March 25, 1997.

William Vol Evans, Douglas, GA, Francisco Gonzalez–Burgos, Alma, GA, for Angela D. Matheny.

Terry Lee Readdick, Whelchel, Brown, Reddick & Bumgartner, Brunswick, GA, for Jimmy L Boatright, Jeff Davis County, Frankie L. Williams, Curtis Harper, Paul McNeal.

John C. Jones, Assistant Attorney General, David J. Marmins, Assistant Attorney General, Atlanta, GA, for Bobby McGee.

## ORDER

ALAIMO, District Judge.

Plaintiff, Angela D. Matheny ("Matheny"), on behalf of herself, and as mother and next friend of her minor children, Traneil L. Benjamin ("Traneil"), Jarvaris T. Ford ("Jarvaris"), and Tierra S. Matheny ("Tierra"), brings the instant action based upon 42 U.S.C. § 1983 against numerous Defendants. Matheny alleges that her children's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution were deprived when she was arrested in her home for the sale of crack cocaine. In executing the arrest warrant, the police allegedly conducted a search of Matheny's apartment using a drug–sniffing dog, and then transported Matheny and her three children to a detention facility. Defendants, Jimmy L. Boatright, Sheriff ("Boatright"), Jeff Davis County, Georgia, a Political Subdivision of the State of Georgia ("County"), Officer Mark Smith ("Smith"), Officer Frankie L. Williams ("Williams"), Officer Curtis Harper ("Harper"), and Officer Paul McNeal ("McNeal"), have filed a Renewed Motion for Summary Judgment,[1] pursuant to Rule 56 of the Federal Rules of Civil Procedure, which will be **GRANTED** for the reasons set forth below.

## FACTS

Matheny is the mother of three minor children, Tierra, Jarvaris, and Traneil, aged 4, 6, and 7, respectively. At the time of her arrest for the sale of crack cocaine on November 9, 1993, several police officers, including Smith, Williams, Harper, and McNeal,[2] arrived at Matheny's apartment at approximately 5:30 A.M., allegedly accompanied by a "large" drug–sniffing dog.[3] (Matheny Aff. ¶ 4.) The officers proceeded to search Matheny's apartment, including the two bedrooms where her children were sleeping. According to Matheny, several police officers first brought the drug–sniffing dog into Jarvaris' bedroom, and then they brought the dog into the bedroom shared by Tierra and Traneil. Matheny alleges that the dog was allowed to come within twelve inches of each of her children. (*Id.* ¶ 5.) The three children allegedly cried and screamed upon being awakened by the police officers and dog. (*Id.*)

Matheny contends that she asked the police officers if she could contact her children's aunt and grandmother to come and take care of them, but that her requests were ignored. (*Id.* ¶ 6.) In any event, Matheny's phone had been previously disconnected. (Defs.' Br. in Supp. of Mot. for Summ. J. Ex. A.) The police proceeded with the arrest, and they took her three children, along with Matheny, to a police car. Matheny claims that her children were not permitted to put on their shoes before being placed in the police car. (Matheny Aff. ¶ 6.) The police car that transported Matheny and her children then proceeded to the sites of two or three other arrests, which Plaintiffs witnessed.

Matheny and her children then were transported to a detention facility where Matheny was interrogated and booked within view of her children. Matheny also alleges that her children overheard "snide remarks" made by police officers, such as "apparently the whole Matheny Family has been arrested." (Matheny Aff. ¶ 11.) Matheny was permitted to contact her children's grandmother and aunt approximately forty–five minutes to one hour after arriving at the detention facility to arrange for them to pick up the children. The three children were picked up by their aunt and grandmother at approximately 7:00 A.M.

Matheny alleges that Traneil, Jarvaris, and Tierra all suffered emotional trauma as a

---

1. Boatright and the County originally filed a Motion for Summary Judgment on July 1, 1996, after which additional defendants were added and discovery was reopened. The Court denied as moot, subject to renewal, the Motion for Summary Judgment. *Matheny v. Boatright*, No. CV295–170 (S.D.Ga. Nov. 20, 1996).

2. Plaintiffs claim that the actions of the police officers were done under the direct supervision of Boatright.

3. Defendants deny that a drug–sniffing dog was used in the execution of the arrest warrant. (Defs.' Br. in Supp. of Mot. for Summ. J. at 7.) The Court, however, must construe the evidence in the light most favorable to Plaintiffs, as non–movants, and, thus, assumes that a drug–sniffing dog was present.

**1042**

result of this incident, which is manifested through various behavioral changes, including bed wetting, displays of anger, and nightmares. (Compl.¶ E.)

## DISCUSSION

### I. Summary Judgment

Defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment requires the movants to establish the absence of genuine issues of material fact, such that the movants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movants meet this burden, "the non–moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non–moving parties to a summary judgment motion need make this showing only after the moving parties have satisfied their burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non–movant. *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir.1992). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non–movant[s] rel[y], are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir.1996).

### II. Section 1983

Plaintiffs bring this action under § 1983 based upon a litany of alleged constitutional deprivations. Matheny claims that Jarvaris, Tierra, and Traneil suffered (1) an unreasonable search and seizure, (2) cruel and unusual punishment, (3) a denial of substantive due process, and (4) a denial of equal protection of the laws. (Proposed Consolidated Pre–Trial Order ¶ 4(c).)

■ Section 1983 actions require a plaintiff to show (1) that the actions complained of were done by a person acting under color of state law, and (2) that the challenged actions deprived plaintiff of rights secured by the Constitution or federal law. *Duke v. Massey*, 87 F.3d 1226, 1231 (11th Cir.1996). Defendants clearly are persons[4] who acted under color of state law and, thus, the only remaining issue is whether Plaintiffs suffered a deprivation of their constitutional rights.

### A. Capacity of Suit Against Individually Named Defendants

■ Defendants argue that the individual Defendants are sued only in their official capacities. (Defs.' Br. in Supp. of Mot. for Summ. J. at 19 n. 10.) It is unclear from the complaint whether Plaintiffs have sued Defendants in their official and/or individual capacities because of Plaintiffs' failure to indicate clearly in the caption the capacity in which each individually named Defendant is sued. Where the complaint is unclear whether an official is sued in his individual or official capacity, or both, the Court must look to the course of the proceedings to determine the nature of the liability sought by plaintiff. *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir.1993). Defendants are correct that the Amended Complaint and Second Amended Complaint allege that the individually named Defendants were acting in "an official capacity." (Defs.' Br. in Supp. of Mot. for Summ. J. at 19 n. 10.) Plaintiffs, however, do make reference to the "individual capacity" of those defendants in their response to the Motion for Summary Judgment (Pls.' Br. in Supp. of their Opp'n. to the Defs.' Renewed Mot. for Summ. J. at 7–8 ("The only new contention raised by the *individual defen-*

---

**4.** Municipalities and other bodies of local government are "persons" within the meaning of § 1983. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611, 635 (1978). See Discussion II. A., *infra,* which concludes that Defendants are sued in both their individual and official capacities.

*dants* in their Renewed Motion for Summary Judgment is that there is some entitlement to qualified immunity from suit ....") (emphasis added).)

The Court, therefore, assumes that the individually named Defendants are sued in both their official and individual capacities. Regardless of the capacity of the suit against the Defendants, Plaintiffs cannot maintain a § 1983 action against them unless Plaintiffs prove that they suffered a deprivation of a constitutional right.

### B. Substantive Due Process

Matheny alleges that her children were denied their substantive due process rights guaranteed by the Fourteenth Amendment, in violation of § 1983, in that bringing the drug–sniffing dog into the children's bedrooms constitutes a "reckless disregard for the children's safety." (*Id.* at 7.) Matheny also alleges that her children suffered a denial of substantive due process when they were transported to the detention facility. (*See* Pls.' Statement of Material Facts ¶ 3.)

The parties rely on a Seventh Circuit case, *White v. Rochford,* 592 F.2d 381 (7th Cir. 1979), as the "seminal" § 1983 case regarding a police officer's duty owed to an arrestee's minor children. (Defs.' Br. in Supp. of Mot. for Summ. J. at 9–11; see Pls.' Br. in Supp. of their Opp'n. to the Defs.' Renewed Mot. for Summ. J. at 7–8.) In *White,* the uncle of two minor children, who were riding with him in his car, was arrested after his car was stopped on a busy Chicago highway. The police officers refused to bring the children to the police station or to help the children contact their parents to pick them up. The police officers then left the children in their uncle's abandoned automobile, which was parked on the side of the highway. Because it was extremely cold, the children left the automobile, crossed eight lanes of traffic, and wandered along the highway at night in search of a telephone booth. The children finally found a telephone, and proceeded to call their mother, who, in turn, called the Chicago Police Department for assistance. The police, however, refused to render any assistance. The children eventually were retrieved by a neighbor after a prolonged length of time passed. It was alleged that the children suffered, *inter alia,* mental pain and anguish as a result of the experience. White, 592 F.2d at 382.

The *White* court held that the children's substantive due process rights were deprived in two respects. First, the *White* court held that the police officers' actions constituted an unjustified intrusion on the children's personal integrity. *Id.* at 384–85. The *White* court reasoned that the officers were grossly negligent since they "could not avoid knowing that, absent their assistance, the ... children would be subjected to exposure to cold weather and danger from traffic." *Id.* at 385. Second, the *White* court held that the police officers offended the Due Process clause because their actions "shocked the conscience." *Id.* at 385–86.

 The duty owed by police officers to an arrestee's minor children apparently is an issue of first impression in the Eleventh Circuit. The Court is persuaded, though, that police officers do owe some duty to an arrestee's minor children. First, the state has an affirmative duty to protect an individual's liberty interests whenever it "restrain[s] the individual's freedom to act on his own behalf-through incarceration, institutionalization or *other similar restraint of liberty* ...." *Merideth v. Grogan,* 812 F.Supp. 1223, 1229 (N.D.Ga.1992) (emphasis added) (quoting *DeShaney v. Winnebago County Social Servs. Dept.,* 489 U.S. 189, 200, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249, 262 (1989)), *aff'd mem.* 985 F.2d 579 (11th Cir.1993). Once police officers take custody of an individual, an affirmative duty arises to protect his or her liberty interests. *Id.* at 1230.

 In the case at bar, although the children were not arrested, the police officers deliberately chose to transport them with their mother to the detention facility. Such action fits within the parameters of a restraint of liberty "similar" to incarceration or institutionalization. Given the young ages of the three children, it is highly unlikely that they were cognizant of their right to refuse to accompany Matheny to the detention facility. The children most likely assumed that they had no choice but to follow the police

officers' directions. The Court, therefore, is convinced that the police officers restrained the children's liberty such that an affirmative duty arose to protect their liberty interests.

Second, the Court is persuaded by the decisions of other circuits, which hold that police officers have a duty, in certain circumstances, not to abandon children who are entrusted to the care of an arrestee or passengers who are relying on an arrestee for transportation. *Wood v. Ostrander,* 879 F.2d 583, 593–96 (9th Cir.1989) (affirming denial of qualified immunity to police officers who abandoned an arrestee's passenger, who subsequently was raped and beaten by a third person, in a high–crime district because the police officer should have known that he was violating the passenger's constitutional rights when he abandoned her and exposed her to unreasonable danger), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990); *White.* 592 F.2d 381 *(infra).* But cf. *Courson v. McMillian,* 939 F.2d 1479, 1496–98 (11th Cir.1991) (holding police officers, who left a female passenger at the side of a highway without transportation after arresting her two companions and towing the arrestee's car, were entitled to qualified immunity because the standard of conduct regarding the abandonment of passengers by police officers was "unsettled" *as of 1985)* (emphasis added); *Hilliard v. City and County of Denver,* 930 F.2d 1516, 1520–21 (10th Cir.1991) (holding qualified immunity protected police officers who left an arrestee's intoxicated passenger, who subsequently was raped and beaten by a third person, in a high–crime area because it was unclear in 1988 "that someone whose person was not under some degree of physical control by the state ... would have a clearly established, constitutionally protected liberty interest")

(emphasis added), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 656, 116 L.Ed.2d 748 (1991).

Although the case law remains unsettled, the Court is persuaded ' by the reasoning employed by courts holding that police officers have a duty not to abandon an arrestee's children and passengers. Furthermore, the cases contrary to finding such a duty are distinguishable. The "passenger" cases do not involve a situation where an individual's freedom is restrained, as opposed to the situation in the instant case where the children's freedom was restrained. Second, a grant of qualified immunity based upon the absence of a "clearly established" right is not the equivalent of a holding that no duty is owed to an arrestee's children or passengers. The passenger and children "abandonment" cases that establish a duty owed by police officers to passengers and children are sufficiently analogous to the case at bar. Accordingly, the Court concludes that police officers owe a duty to an arrestee's minor children, under the circumstances revealed in this case.

█ The Court declines, however, to guess what the appropriate benchmark is to determine whether police officers breached the duty owed by them to an arrestee's minor children. The Court is persuaded, though, that Defendants in the instant case did not violate the substantive due process rights of Traneil, Jarvaris, and Tierra, under any of the enunciated standards.[5] There is no evidence that the children were physically harmed in any manner. Furthermore, the children were detained for only a short period of time, approximately an hour and a half.[6]

In light of the fact that the alternative action available to Defendants was to leave the children unattended, it is incongruous to the Court that the Defendants' actions re-

---

**5.** Applying the standards established in *White,* it is apparent that the children did not suffer a deprivation of substantive due process. First, Defendants' actions do not constitute an unjustified intrusion on the children's personal integrity. Second, Defendants' actions do not even cause the Court to raise its proverbial eyebrow, yet alone shock its conscience.

**6.** The Court notes that Matheny alleges that she and her children "spent a good portion of the day ... in an official police vehicle," and that

Jarvaris and Traneil missed their regularly scheduled classes at school "[a]s a result of being detained with their mother." (Compl.¶¶ C, D.) Matheny, however, states that Defendants arrived at her apartment at approximately 5:30 A.M., and that her children were picked up at the detention facility at approximately 7:00 A.M. (Matheny Aff. ¶¶ 3, 12.) The Court, thus, concludes that the experience of which Plaintiffs complain lasted only for approximately an hour and a half.

sulted in a deprivation of the children's substantive due process rights. Matheny does not dispute that her phone was disconnected and inoperative at the time of her arrest. Matheny, therefore, had no available means to contact either the children's grandmother or aunt to care for the children. Matheny intimates that the police officers could have driven to the house of her children's grandmother or aunt and dropped off the children. (Matheny Aff. ¶ 8, 9.) While that course of action may have been a wiser choice of action,[7] the actions taken by Defendants simply do not infringe upon the substantive due process rights guaranteed by the Fourteenth Amendment.

The Court is sympathetic to Traneil, Jarvaris, and Tierra, who undoubtedly have suffered emotionally as a result of their mother's arrest. Any emotional trauma suffered by them, however, is not the fault of Defendants, who merely were carrying out their duty to execute arrest warrants. Rather, it appears to the Court that the blame is attributable to Matheny, who illegally sold crack cocaine, which necessitated her arrest.

Accordingly, Defendants' Motion for Summary Judgment will be granted as to the substantive due process claim.[8]

## C. Search and Seizure

Matheny also alleges that Defendants violated § 1983 based upon a deprivation of her children's rights under the Fourth Amendment. Specifically, Matheny claims that Defendants engaged in a "misuse of force."[9] (Proposed Consolidated Pre–Trial Order at ¶ 5(a).)

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443, 454 (1989) (citing *Baker v. McCollan.* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433, 439 (1979)). Unfortunately, Matheny fails to identify the specific constitutional right allegedly violated. The Court, in an effort to address fully and fairly all of Plaintiffs' claims, therefore, must surmise the basis for their Fourth Amendment claim and, essentially, develop arguments supporting that claim. Plaintiffs' Fourth Amendment claim, apparently, is based on two grounds: (1) an excessive use of force in the search of her apartment and (2) an unreasonable seizure of her children.

First, Matheny apparently contends that Defendants improperly conducted the search of her apartment. (*See* Proposed Consolidated Pre–Trial Order ¶ 5(a).) Matheny objects to the use of a drug–sniffing dog by Defendants in the search, which included the bedrooms of her children. (Pls.' Br. in Supp. of their Opp'n. to the Defs.' Renewed Mot. for Summ. J. at 7.) Matheny claims that a "large police dog" confronted her children, which resulted "in the Minor Plaintiffs being terrorized, causing [them] emotional injury." (Proposed Consolidated Pre–Trial Order ¶ 5(a).) Matheny characterizes bringing the dog into the children's bedrooms as a "reckless disregard for the children's safety." (Pls.' Br. in Supp. of their Opp'n. to the Defs.' Renewed Mot. for Summ. J. at 7.)

Matheny does not contend that the dog had any physical contact with her children or that the dog displayed any aggressive behavior. Rather, Matheny seems to claim that the mere presence of Defendants

---

7. The Court, however, is not convinced that driving the children to their grandmother's or aunt's house would have been a wiser course of action. Police officers should not be expected to act as taxi drivers and, furthermore, Defendants chose a course of action that ensured that the children were safe from harm. It is arguable that Defendants chose the wisest course of action available to them.

8. Although Plaintiffs refer to the use of the drug–sniffing dog in the context of her argument regarding the alleged infringement of substantive due process rights, that issue properly is analyzed under the Fourth Amendment, which is discussed *infra.*

9. Plaintiffs fail to address the Fourth Amendment claim in their scant response, which consists of only three pages of argument and citation to authority, to Defendants' Motion for Summary Judgment. Since Plaintiffs refer only to Defendants' alleged "misuse of force" as constituting a violation of the Fourth Amendment, the Court confines its analysis to that issue.

**1046**

and the dog in her children's bedrooms was unreasonable. Plaintiffs, however, cite to no authority that supports their contention that the presence of the dog near the children constitutes a "misuse of force," and the Court is unaware of any such authority. In fact, case law generally seems to support the constitutionality of using drug–sniffing dogs. *See generally e.g, U.S. v. Place.* 462 U.S. 696, 707, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110, 121 (1983) (holding dog sniff of luggage does not constitute a search implicating the Fourth Amendment). Moreover, Plaintiffs do not present any evidence that suggests that the dog sniffed the children, which would require an analysis whether their person was searched, and, if so, if it was a reasonable search. No genuine issue of material fact exists that supports a finding that Defendants improperly used the drug–sniffing dog in their search of Matheny's apartment.

Second, Plaintiffs' Fourth Amendment claim could be based on the alleged improper seizure of the children. Matheny complains that she was not allowed to make arrangements for someone to pick up the children at their home, that the children allegedly were not allowed to put on their shoes before walking to the police car, and that her children were able to see her being booked at the detention facility.

■ A "seizure" triggering the Fourth Amendment's protections occurs when government actors restrain the liberty of a citizen by means of physical force or show of authority. *Graham,* 490 U.S. at 396 n. 10, 109 S.Ct. at 1871 n. 10, 104 L.Ed.2d at 455 n. 10 (citing *Terry v. Ohio,* 392 U.S. 1, 20 n. 16, 88 S.Ct. 1868, 1878 n. 16, 20 L.Ed.2d 889, 905 n. 16 (1968)). As previously discussed, the children most likely believed that they had no choice but to follow the directions of Defendants and, thus, Defendants arguably "seized" the children through a show of authority.

■ All claims that law enforcement officers used excessive force [10] in the course of a seizure of a free citizen are analyzed

under the "reasonableness standard" of the Fourth Amendment. *Id.* at 396, 109 S.Ct. at 1871, 104 L.Ed.2d at 454. Even assuming that Defendants' actions constituted a seizure, Plaintiffs still must show that a genuine issue of material fact exists whether the seizure was reasonable to survive summary judgment. Determining the reasonableness of a seizure requires a balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." *Id.,* at 396, 109 S.Ct. at 1871, 104 L.Ed.2d at 455 (citations omitted). The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene. *Id.,* at 396, 109 S.Ct. at 1872, 104 L.Ed.2d at 455. In other words, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456.

■ Matheny does not contend that Defendants had any physical contact with the children. Nor does she claim that the children suffered any physical injury inflicted by Defendants. Matheny also does not claim that Defendants directed any harsh or abusive language at the children. In light of the circumstances surrounding Matheny's arrest, namely that her three minor children were present without any other adult present to care for them, Defendants' actions were reasonable. The facts suggest that rather than putting the children at risk, Defendants undertook to care for the children until suitable arrangements could be made for their care.

In sum, there was no improper use of the drug–sniffing dog by Defendants, nor did Defendants improperly seize the children. Accordingly, Defendants' Motion for Summary Judgment will be granted as to the Fourth Amendment claim.

### D. Additional Claims

Plaintiffs also assert that they suffered cruel and unusual punishment and a denial of

---

**10.** Plaintiffs claim that Defendants engaged in a "misuse of force," which is the equivalent to the use of excessive force.

equal protection of the laws. Plaintiffs, however, do not present any argument or evidence with regard to either of those claims. Because the Court finds those claims to be without merit, summary judgment also will be granted as to those claims.

*CONCLUSION*

The Court has carefully considered the evidence and arguments presented by both parties. Defendants' Motion for Summary Judgment is **GRANTED.**