court's two-level enhancement of defendant's offense level was not improper.

### III. CONCLUSION

For all of the foregoing reasons, defendant's conviction and sentence are **AFFIRMED**, the district court having properly denied defendant's motions to suppress and having made no reversible error in sentencing defendant.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0333P (6th Cir.)
File Name:  00a0333p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

   *v.*                                        No. 98-6775

SCOTTIE RAY HURST,
   *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 97-00151—R. Leon Jordan, District Judge.

Argued:  May 2, 2000

Decided and Filed:  September 22, 2000

Before:  MOORE and GILMAN, Circuit Judges;
McKEAGUE,[*]  District Judge.

————————

#### COUNSEL

**ARGUED:**  J. Ronnie Greer, Greeneville, Tennessee, for Appellant.  Steve H. Cook, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

————————

[*]The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

**ON BRIEF:** J. Ronnie Greer, Greeneville, Tennessee, for Appellant. Steve H. Cook, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

_____

## OPINION

_____

DAVID W. McKEAGUE, District Judge. This is an appeal from a conviction and sentence rendered in the United States District Court for the Eastern District of Tennessee. Defendant was charged in a seven-count indictment with conspiracy to transport stolen firearms and ammunition in interstate commerce, possession of stolen firearms and ammunition, and possession of firearms by a convicted felon. A jury found him guilty as charged, and the district court sentenced him to a 288-month term of imprisonment. On appeal, defendant contends that the district court erred when it denied both his motion to suppress evidence seized during a warrantless search and his motion to suppress statements made by him. He also claims error in connection with the district court's imposition of sentence and application of the United States Sentencing Guidelines ("U.S.S.G."). For the reasons that follow, we affirm the conviction and sentence in all respects.

### I. FACTUAL BACKGROUND

Rodney Smith, whose Fentress County (Tennessee) home had been burglarized in the afternoon of March 27, 1992, reported having seen what he thought was a dark-colored Thunderbird in the driveway of his house shortly before he discovered the burglary had occurred. Shortly thereafter, an off-duty Fentress County Sheriff's Deputy observed a vehicle matching the reported description not far from the Smith residence southbound on US-127 traveling toward Cumberland County at a high rate of speed. He noted that the front end of the vehicle was damaged and the grill was missing. The information was conveyed to Cumberland County authorities. Soon thereafter, Cumberland County

§ 2K2.1(a)(7). At the time of defendant's sentencing, Note 12 provided in relevant part as follows:

> If the only offense to which § 2K2.1 applies is 18 U.S.C. § 922(i), (j), or (u), or 18 U.S.C. §924(l) or (m) (offenses involving a stolen firearm or stolen ammunition) and the base offense level is determined under subsection (a)(7), do not apply the adjustment in subsection (b)(4) unless the offense involved a firearm with an altered or obliterated serial number. This is because the base offense level takes into account that the firearm or ammunition was stolen.

U.S.S.G. § 2K2.1, comment. (n.12).

Defendant Hurst was convicted of a firearms violation other than the enumerated offenses (i.e., convicted felon in possession of a firearm, 18 U.S.C. § 922(g)(1)) and his base offense level was determined under § 2K2.1(a)(4), not (a)(7). It therefore follows, in accordance with the plain language of Application Note 12, that the Note 12 exception to the § 2K2.1(b)(4) stolen firearm enhancement does not apply. Consistent with the uniform approach of our sister circuits since the 1995 amendment of Note 12, we also reject *Rowlett* and hold that the stolen firearm enhancement may apply pursuant to Note 12 even though the subject firearm had not been stolen before the defendant acquired it. *See United States v. Shepardson*, 196 F.3d 306, 313-14 (2d Cir. 1999), *cert. denied*, 120 S.Ct. 1258 (2000). *United States v. Hawkins*, 181 F.3d 911, 912-13 (8th Cir.), *cert. denied*, 120 S.Ct. 436 (1999); *United States v. Brown*, 169 F.3d 89, 93 (1st Cir. 1999); *United States v. Luna*, 165 F.3d 316, 324-25 (5th Cir.), *cert. denied,* 119 S.Ct. 1783 (1999); *United States v. Turnipseed*, 159 F.3d 383, 385-86 (9th Cir. 1998). The fact that the handgun defendant Hurst possessed had not been stolen before defendant acquired it does not defeat the fact that he acquired it by theft and then possessed a stolen firearm. Because defendant was convicted of a firearms offense other than those involving stolen firearms, the district

*McDonald*, 165 F.3d at 1037. Defendant Hurst's use of the stolen handgun in the perpetration of the Smith burglary certainly involved another offense beyond mere firearms possession or trafficking.

Section 2K2.1(b)(5) "is a sentencing enhancement provision that was created in response to a concern about the increased risk of violence when firearms are used or possessed during the commission of another felony." *McDonald*, 165 F.3d at 1037. Defendant used a stolen firearm in the commission of a separate and distinct burglary, conduct which increased the risk of violence. Application of the four-level enhancement was therefore clearly not improper.

### G.  Enhancement for Possession of Stolen Firearms

The district court also applied a two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4) because the firearms possessed by defendant were stolen.[6] Citing *United States v. Rowlett*, 23 F.3d 300 (10th Cir. 1994), defendant contends the § 2K2.1(b)(4) enhancement applies only if the firearms he possessed were stolen before he possessed them. In *Rowlett*, the Tenth Circuit concluded that § 2K2.1(b)(4) "is concerned not with the way in which firearms and ammunition are acquired by a particular defendant, but rather with their condition when acquired, by whatever means." *Id.* at 304. Because there is no evidence that the handgun he stole on March 27, 1997 had earlier been stolen, defendant argues this two-level enhancement was improper.

*Rowlett* was decided prior to the 1995 amendment of Application Note 12 to § 2K2.1. Since 1995, Note 12 has made it clear that the § 2K2.1(b)(4) enhancement applies to all firearms offenses except certain enumerated offenses where the base offense level is determined under

---

[6] Section 2K2.1(b)(4) provides: "if any firearm was stolen, or had an altered or obliterated serial number, increase by two levels."

Sheriff's Deputy Scott Iles observed a vehicle matching the reported description eastbound on I-40 near the intersection of US-127, approximately 25 minutes' driving time from the Smith residence. Iles pulled the vehicle over.

The vehicle was actually a dark blue Mercury Cougar, similar in appearance to a Thunderbird. Defendant Scottie Ray Hurst was the driver, co-defendant Edwin Quinones, Jr., was in the front passenger seat, and a hitchhiker was in the back seat. After obtaining personal identification, Iles advised Hurst that his vehicle had been reported for suspected involvement in a burglary and asked if there was any stolen property in the car. When Hurst said there was not, Iles asked for consent to search. Hurst consented, but then resisted precautionary handcuffing and fled the scene. Iles pursued Hurst briefly on foot, and then returned to the automobile to assist the back-up officer, Detective David Gibson, with the other subjects. A preliminary search of the vehicle was conducted. Quinones was arrested; the hitchhiker was released. The vehicle was impounded and subjected to an inventory search. The inventory search, conducted by Iles and Gibson, yielded jewelry, clothing, cash, a Sony PlayStation, compact discs, a cellular phone, a handgun, a shotgun, and ammunition. Meanwhile, other officers continued to pursue Hurst, apprehending him several hours later. The search incident to his arrest yielded several gold necklaces and $2 bills.

On December 17, 1997, the federal grand jury in the Eastern District of Tennessee returned a seven-count indictment charging Hurst and Quinones, in count one, with conspiracy to transport stolen firearms and ammunition in interstate commerce, in violation of 18 U.S.C. § 371; in counts two, three and five, with possession of stolen firearms, in violation of 18 U.S.C. § 922(j); and in count four, with transporting stolen firearms, in violation of 18 U.S.C. § 922(i). Counts six and seven charged Hurst with being a convicted felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). Hurst and Quinones were tried separately. The district court denied defendant Hurst's

pretrial motions to suppress evidence seized in a warrantless search and to suppress statements made by him. At the conclusion of a two-day jury trial on July 27-28, 1998, defendant was found guilty as charged. A sentencing hearing was conducted on December 11, 1998, at which the district court resolved various objections. Defendant was sentenced to a prison term of 60 months as to count one, 120 months as to count two, and 108 months as to each of counts three through seven. The sentences as to counts one, two and three were ordered to run consecutively, resulting in an effective prison sentence of 288 months. Defendant now appeals as of right.

## II. ANALYSIS

Two of defendant's appellate claims relate to denials of motions to suppress evidence. When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Navarro-Camacho,* 186 F.3d 701, 705 (6th Cir. 1999); *United States v. Walker*, 181 F.3d 774, 776 (6th Cir.), *cert. denied*, 120 S.Ct. 435 (1999).[1] The evidence must be reviewed, however, "in the light most likely to support the district court's decision." *Navarro-Camacho*, 186 F.3d at 705.

---

[1] We are not unmindful that the Supreme Court has determined that "all evidentiary decisions are reviewed under an abuse of discretion standard." *General Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); *see also Trepel v. Roadway Express*, 194 F.3d 708, 716 (6th Cir. 1999). A ruling on a motion to suppress, however, is not simply a ruling on an evidentiary objection or a motion in limine based on the Federal Rules of Evidence. A motion to suppress is the mechanism whereby fundamental constitutional rights guaranteed by the Fourth and Fifth Amendments are protected through enforcement of the judge-made Exclusionary Rule. Motions to suppress normally implicate mixed questions of fact and law, requiring the lower court to make findings of fact and conclusions of law, rather than simply interpreting the Federal Rules of Evidence. We therefore conclude that neither *Joiner* nor *Trepel* has changed the standard of review applicable to a ruling on a motion to suppress.

level guideline enhancement, a finding of a separation of time between the offense of conviction and the other felony offense or a distinction of conduct between that occurring in the offense of conviction and the other felony offense. Otherwise, the word "another" is superfluous, and of no significance to the application of that provision.

*Id.* at 400 (footnote omitted). There was no allegation, the *Sanders* court observed, that Sanders used any of the stolen firearms to commit a crime after the theft. *Id.* If he had committed "another felony offense" after the burglary of the pawn shop, the court continued, enhancement pursuant to § 2K2.1(b)(5) would have been proper. *Id.* at 402. *See also United States v. McDonald*, 165 F.3d 1032, 1036-37 (6th Cir. 1999) (following *Sanders*); *accord United States v. Szakacs*, 212 F.3d 344, 350-52 (7th Cir. 2000).

The facts and consequent ruling in *Sanders* are clearly distinguishable. Here, the evidence showed that the handgun stolen by Hurst in one burglary *was* used in the commission of "another" later burglary. There was indisputably a separation of time, albeit indeterminate in length, between the completion of the first burglary on March 27, 1997, when the handgun was stolen, and the commission of the second, at the Smith residence, later that day, during which Hurst carried the stolen handgun. There was also a distinction of conduct. Although both burglaries were committed on the same day and defendant's *modus operandi* was the same, each burglary resulted in the invasion of distinct homes in different counties, in the theft of different personal property, and in injury to different victims.

Thus, as the *Sanders* court recognized, facts such as those here presented clearly fall within the coverage of § 2K2.1(b)(5). Moreover, application of the enhancement under these facts is consistent with Application Note 18, which states that "'another felony offense'. . . . refer[s] to offenses other than . . . . firearms possession or trafficking offenses." U.S.S.G. § 2K2.1(b)(5), comment. (n.18);

offense.[5]  Based on Quinones' testimony, the district court found that on March 27, 1997, defendant Hurst, while burglarizing the Smith residence, carried a handgun he had stolen earlier that day.

Quinones recalled that he had seen a man in a nearby field as they pulled into the driveway of the Smith residence. When he reported this, while inside the Smith residence, Hurst displayed the handgun, saying "that's what I have this for." Defendant contends that, even if Quinones' testimony is credited, his theft of the handgun in one burglary and his possession of it during a second burglary later the same day are both parts of the same course of conduct and should not be treated as separate offenses for purposes of enhancement under §2K2.1(b)(5). In support, he cites *United States v. Sanders*, 162 F.3d 396 (6th Cir. 1998).

In *Sanders*, the defendant burglarized a pawn shop, stealing firearms, among other things. He placed them in his car and shortly thereafter was stopped by the police for a traffic violation. The firearms were discovered. Defendant Sanders pled guilty to knowingly transporting stolen firearms in violation of 18 U.S.C. § 922(i), and to being a convicted felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). The district court imposed a four-level enhancement pursuant to § 2K2.1(b)(5). This Court reversed, finding the enhancement improper because there was only one offense which resulted in the defendant's possession of the firearms – the burglary of the pawn shop. *Id.* at 399. The *Sanders* court reasoned as follows:

> A logical reading of the § 2K2.1(b)(5) Guideline term "another felony offense" would at least require, as a condition precedent to the application of a major four

---

[5] Section 2K2.1(b)(5) requires a four-level offense level enhancement "if the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."

The remaining appellate issues relate to sentencing. The sentencing court's factual findings in relation to application of the Sentencing Guidelines are subject to the deferential "clearly erroneous" standard of review. *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997), *cert. denied*, 118 S.Ct. 1572 (1998). Legal conclusions are reviewed *de novo. Id.* A finding of fact will be deemed clearly erroneous only when, although there may be some evidence to support the finding, the reviewing court, upon review of the entire record, is left with the definite and firm conviction that a mistake has been committed. *Id.*

### A.  Validity of Automobile Search

Defendant contends that the district court erred when it denied his motion to suppress evidence seized from his automobile. First, he argues the circumstances surrounding the stopping of his vehicle were insufficient to create "reasonable suspicion," as required by *Terry v. Ohio*, 392 U.S. 1 (1968). Specifically, he contends his vehicle, a Mercury Cougar containing three persons at the time of the stop, did not match the description given to authorities, of a Ford Thunderbird containing two persons.

Under *Terry*, "where a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances." *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994). The *Terry* doctrine applies to investigative stops of moving automobiles. *Id.* The applicable law is well summarized as follows:

> [A]n investigative detention is permissible when it is based upon "specific and articulable facts which, taken together with rational inferences from those facts," give rise to a reasonable suspicion that the individual is, was, or is about to be engaged in criminal activity. ... In reviewing a challenged investigative stop, "the totality of the circumstances — the whole picture — must be taken into account." ... Furthermore, "[i]n assessing the

reasonableness of the stop, the facts are 'judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?'"

*United States v. Barrett*, 890 F.2d 855, 860 (6th Cir. 1989) (citations omitted). While an officer making a *Terry* stop must have more than a hunch, "reasonable suspicion" is considerably less than proof of wrongdoing by a preponderance of the evidence. *United States* v. *Sokolow*, 490 U.S. 1, 7 (1989).

A car roughly matching the appearance of Hurst's in color and style was reportedly seen outside the Smith residence at the time the burglary occurred.[2] Minutes later, an off-duty officer observed a vehicle matching the reported description traveling southbound away from the vicinity of the Smith residence at high speed, and noted the front grill was missing. When Deputy Iles, in the subject vehicle's reported direction of travel, received this distinctive description and then observed a vehicle matching the description at a location consistent with the time needed to travel to that point from the Smith residence, (i.e., less than a half-hour after the burglary was reported), he had knowledge of specific and articulable facts, which, taken together with reasonable inferences, certainly gave rise to reasonable suspicion of criminal activity. The presence of three persons in the car, rather than two, is a discrepancy that might reasonably be explained in any number of ways and does not defeat the assessment that Deputy Iles had reasonable grounds to investigate further. The investigative stop of Hurst's vehicle was not premised on a mere hunch, but on specific and articulable facts. Considering the totality of the circumstances, the investigative stop was clearly justified.

---

[2] Deputy Iles testified that a Cougar and a Thunderbird "look practically alike." He characterized them as "sister models," . . . . "identical except for a few cosmetic differences."

The non-exhaustive list of examples of obstructive conduct found in the Sentencing Guidelines Commentary includes "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1, comment. (n. 4(a)). It is for the district court to make a factual finding whether a defendant obstructed or attempted to obstruct justice. Credibility determinations are integral to this fact-finding role. Once a sentencing court finds by a preponderance of the evidence that a defendant threatened or intimidated a potential witness, the court has no discretion; it must enhance the sentence accordingly. *See Zajac*, 62 F.3d at 148, 150.

At the sentencing hearing, defendant Hurst admitted having attacked Quinones at the jail church service. However, he disavowed any intent to deter Quinones from cooperating with the government. Quinones' contrary impression of defendant's motives presented a question of credibility for the sentencing court to resolve. The district court determined, after evaluating the testimony of both men, that defendant had used threats of violence and had physically assaulted Quinones to force him to withdraw from his agreement to cooperate with the authorities. Defendant has failed to show that the district court's determination was clearly erroneous. Accepting, therefore, as we must, the truthfulness of Quinones' testimony, we conclude the district court's determination was supported by a preponderance of the evidence. We further find that defendant's intimidating conduct was obstructive of justice, and we uphold the two-level enhancement for obstruction of justice.

### F.    Enhancement for Possession of Firearm in Connection with Another Felony

Pursuant to U.S.S.G. § 2K2.1(b)(5), the district court imposed a four-level enhancement, finding defendant had used or possessed a firearm in connection with another felony

### E.  Obstruction of Justice Enhancement

The district court applied a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.[4]  The district court's obstruction of justice enhancement was based on two findings.  First, defendant was found to have committed perjury in the suppression hearing before the magistrate judge and at sentencing.  Second, defendant was found to have assaulted co-defendant Quinones in an attempt to deter his cooperation with the government.

Defendant acknowledges a finding of perjury may support an obstruction of justice enhancement.  He also acknowledges that he gave false testimony at the suppression hearing, but he argues it was not material testimony.  Defendant contends a finding of materiality is prerequisite to enhancement for perjury pursuant to § 3C1.1.  *See United States v. Dunnigan*, 507 U.S. 87, 95 (1993); *United States v. Spears*, 49 F.3d 1136, 1143 (6th Cir. 1995).  He argues the district court did not make such a materiality finding.

The government contends that even if the district court failed to make a sufficiently explicit determination of the materiality of defendant's various false statements, the obstruction of justice enhancement is proper based on defendant's intimidation of Quinones. Quinones testified at defendant's sentencing that defendant had threatened him and physically assaulted him at a church service in the jail, for being a "snitch."  He also testified that defendant had incited other inmates to assault him for the same reason.  Quinones subsequently withdrew his agreement to cooperate with the authorities.  Defendant contends that Quinones' testimony is not credible.

---

[4]Section 3C1.1 provides: "If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels."

Next, defendant argues that even if the *Terry* stop was proper, justifying a reasonable search for weapons, the complete inventory search of his car without a warrant was not justified.  The district court found, however, that defendant had voluntarily consented to the search.  Although defendant denied having given consent at the suppression hearing, the district court credited the testimony of Iles and Gibson, who both heard him consent under circumstances which suggest no coercion.

Consent is a question of fact, to be determined from the totality of the circumstances, and reviewed for clear error. *United States v. Erwin*, 155 F.3d 818, 822-23 (6th Cir. 1998). In reviewing the district court's denial of the motion to suppress, we must consider the evidence in the light most favorable to the government.  *Id.* at 822.

The government had the burden of proving defendant's consent by clear and positive testimony.  *Id.* at 823.  Through the testimony of Iles and Gibson, the government satisfied its burden of showing that defendant voluntarily consented to the search.  Defendant offers no reason to second-guess the district court's credibility determination in this regard.  The magistrate judge, whose report and recommendation was approved by the district court, correctly observed that defendant's credibility was undercut by his inability to explain the presence of guns and other stolen property in the car.  There is no basis in the record to conclude the district court clearly erred in finding that defendant voluntarily consented to the search.[3]

---

[3]Although defendant has not made the argument on appeal, it might reasonably be questioned whether defendant's resistance to handcuffing and flight from the scene implied a withdrawal of consent.  First of all, under the circumstances, where defendant was reasonably suspected of having just burglarized a home and might reasonably have been deemed armed and dangerous, the officers' attempt to use handcuffs as a precautionary measure to secure their safety during the vehicle search was not unreasonable or otherwise improper.  *See Houston v. Clark County Sheriff Deputy John Does*, 174 F.3d 809, 814-15 (6th Cir. 1999) (precautionary handcuffing reasonably necessary for protection of officers

In addition, the district court concluded the search was lawfully conducted as an inventory search of an impounded vehicle. It is well-established that law enforcement officers may make a warrantless search of a legitimately seized vehicle provided the inventory is conducted according to standardized criteria or established routine. *Colorado v. Bertine*, 479 U.S. 367, 374 n.6 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976).

Again, the report and recommendation of the magistrate judge who conducted the hearing on the motion to suppress explains why, based on the testimony of Iles and Gibson, the inventory search of defendant's car was justified and appropriate. Inasmuch as Hurst had fled the scene, ostensibly abandoning the vehicle, and the officers had already uncovered a loaded handgun under the driver's seat during their search for weapons incident to the *Terry* stop, the seizure and inventorying of the vehicle were justified to protect the public, protect the property rights of the vehicle's owner, and protect the police from potential claims and potential dangers. *See Bertine,* 479 U.S. at 369-73. The testimony also established that the inventory was conducted pursuant to

---

does not exceed bounds of *Terry* stop).

   Secondly, the communicative significance of defendant's flight is ambiguous. Granted, when law enforcement officers rely upon consent as the basis for a warrantless search, the scope of the consent given determines the permissible scope of the search. *United States v. Gant*, 112 F.3d 239, 242 (6th Cir. 1997). The standard for measuring the scope of consent given is objective reasonableness – "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). Where the record shows defendant expressly consented to the vehicle search, and clearly had the ability and opportunity to expressly withdraw his consent at any time but failed to do so, the officers were objectively justified in construing his flight not as a withdrawal of consent, but as an abandonment of his vehicle, whereby he relinquished any reasonable expectation of privacy in the contents of the vehicle. *See United States v. Oswald*, 783 F.2d 663, 666 (6th Cir. 1986) (where circumstances, objectively viewed, reflect intent to abandon a vehicle, reasonable expectation of privacy therein is relinquished, together with Fourth Amendment protections).

---

considered on appeal). Accordingly, defendant's claim of error is rejected.

### D.   Enhancement for Number of Firearms

At sentencing, the district court applied a six-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1). Considering defendant's relevant conduct during a common scheme of burglaries committed over a six-month period, the court found that more than 50 firearms were stolen and sold. Defendant acknowledges the court's finding is supported by the testimony of co-defendant Quinones. Yet, he contends Quinones' testimony is uncorroborated and not credible.

Quinones testified at the sentencing hearing that he and defendant Hurst began to commit burglaries together in September 1996. He testified that they typically committed burglaries on three or four days per week, burglarizing two-to-three homes per day; stealing, on average, three guns per house. He estimated they had stolen more than 50 guns during the six-month period. About this estimate, he testified, there was no question in his mind.

Generally, factual findings relevant to sentencing must be supported only by a preponderance of the evidence. *United States v. Zajac*, 62 F.3d 145, 148 (6th Cir. 1995). The sentencing court's credibility determinations, like other factual findings, must be accepted on review unless shown to be clearly erroneous. *Id.* Defendant has failed to demonstrate that the district court clearly erred in its assessment of Quinones' credibility or determination of defendant's relevant conduct. We therefore find no error in the district court's six-level enhancement based on the number of firearms involved.

The incriminating nature of the statement is marginal – especially considering the strong physical evidence against defendant, and cannot reasonably be deemed to have affected defendant's substantial rights.

Accordingly, we find no error in the district court's denial of defendant's motion to suppress his statement.

## C.  Unaddressed Objections to Presentence Report

Defendant contends the district court erred by failing to expressly rule on two of his objections to the presentence report. Specifically, he contends the court failed to rule on his objections to a recommended two-level enhancement of the base offense level pursuant to U.S.S.G. § 2K2.1(b)(4) (if any firearm was stolen) and a recommended four-level enhancement pursuant to § 2K2.1(b)(5) (if a firearm was used in connection with another felony offense).  In response, the government correctly contends that defendant effectively waived his right to object (1) by failing to allege in either objection that the report contains factual inaccuracies, and (2) by failing to specifically bring these matters to the attention of the court during the sentencing hearing.

Under Fed. R. Crim. P. 32(c)(1), the sentencing court is required to either make a finding on each matter controverted or determine that no finding is necessary because the matter will not affect sentencing.  This Court requires literal compliance with Rule 32(c)(1). *See United States v. Monus*, 128 F.3d 376, 396 (6th Cir. 1997); *United States v. Tackett*, 113 F.3d 603, 613-14 (6th Cir. 1997); *United States v. Fry*, 831 F.2d 664, 667 (6th Cir. 1987).  Yet, where defendant did not even assert that the objected-to recommendations were based on false or unreliable information, and did not expressly call them to the court's attention during the sentencing hearing, it can hardly be said that these matters were sufficiently "controverted" to trigger the sentencing court's fact-finding duty under Rule 32(c)(1). *See Fry*, 831 F.2d at 667-69 (inaccuracies not properly presented to the sentencing court at the time of sentencing may not be

routine, standardized procedures.  Because defendant has failed to demonstrate that the officers impounded and inventoried the car "in bad faith or for the sole purpose of investigation," the inventory search was properly held lawful. *See United States v. Harvey*, 16 F.3d 109, 112 (6th Cir. 1994) (quoting *Bertine*, 479 U.S. at 372).

Accordingly, the motion to suppress evidence seized from the automobile was properly denied.

## B.  Admissibility of Defendant's Statement

On May 22, 1997, while detained at the Fentress County Jail, defendant made certain statements to ATF Special Agent Vendarryl Jenkins in the presence of Knoxville Police Officer James Claiborne.  In moving to suppress one of the statements, defendant contended it had been taken in violation of his *Miranda* rights.

At the suppression hearing, Jenkins testified that he first explained to defendant Hurst that he and Claiborne were interested in talking with him about burglaries in which he may have been involved.  Jenkins said he read defendant his *Miranda* rights from a pre-printed card.  Defendant purportedly responded that he understood his rights, but refused to sign the card, saying he was willing to answer only specific questions.  When Jenkins and Claiborne  explained that they were particularly interested in information relating to firearms trafficking, defendant said he was not willing, as a convicted felon, to discuss stolen firearms.  As the conversation seemed to be coming to an end, Jenkins advised defendant that "we've got good information on you." Defendant reportedly responded that he knew they got their information from Edwin (Quinones). And he added, "It was his [Quinones'] idea to do the burglaries."   This is the statement the district court refused to suppress.

Claiborne's account of the encounter was substantially the same as that given by Jenkins.  Defendant's account was materially different only in that he did not remember Jenkins reading him the *Miranda* rights.  Yet, defendant freely

admitted at the suppression hearing that he was familiar with his right to remain silent, having been interviewed by law enforcement officers before. He also admitted he was willing to speak with the officers provided they asked specific questions.

In moving to suppress the statement, defendant contended that his Fifth Amendment right to remain silent was violated in that he had not effectively waived it at the time the statement was made. The district court denied the motion, finding that Jenkins did read defendant his *Miranda* rights and that defendant was not subjected to interrogation when he volunteered his statement to the officers. On appeal, defendant maintains he was subjected to interrogation, citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980), where the Supreme Court held:

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

(Footnotes omitted.) Thus, interrogation triggers the need to give the *Miranda* warnings.

Defendant has not challenged the district court's finding that he had been given the *Miranda* warnings and was otherwise aware of his right to remain silent. He maintains, however, that he had invoked his right to remain silent when he chose not to answer the officers' questions about firearms. Statements made thereafter, he contends, are admissible only if the officers scrupulously honored his right to cut off questioning. *See Michigan v. Mosley*, 423 U.S. 96 (1975). Defendant maintains Special Agent Jenkins did not scrupulously honor his Fifth Amendment right, but attempted

to elicit incriminating information from him after he had attempted to cut-off questioning.

Defendant's claim of error fails for three reasons. First, his argument depends upon a finding that defendant articulated his right to remain silent sufficiently clearly that a reasonable officer would, under the circumstances, perceive it as such. *See Davis v. United States*, 512 U.S. 452, 459 (1994) (determination whether right to counsel has been effectively invoked is objective one); *Medina v. Singletary*, 59 F.3d 1095, 1100-01 (11th Cir. 1995), *cert. denied*, 517 U.S. 1247 (1996) (applying *Davis* standard to invocation of right to remain silent). Considering the unchallenged findings that defendant was aware of his *Miranda* rights and expressly agreed to answer specific questions, his refusal to answer a question about stolen firearms, viewed objectively under the circumstances, can hardly be deemed a clear and unequivocal assertion of his right to remain silent in response to any subsequent questions.

Second, the mere statement by Jenkins that "we've got good information on you," viewed in context, contains no compulsive element suggesting a Fifth Amendment violation under the circumstances. Moreover, defendant's statement, relating to the burglaries, was within the scope of the subject matter he had been generally willing to discuss. It was not directly related to the specific subject, i.e., firearms, with respect to which he had declined to answer questions. In other words, there is nothing in the nature of defendant's statement to suggest it was the product of coercion or compulsion. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Innis*, 446 U.S. at 299-300 (quoting *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966)). The district court's finding that defendant's statement was voluntarily made has thus not been shown to be clearly erroneous.

Third, even if the district court were deemed to have erred in admitting defendant's statement, the error was clearly harmless and is properly disregarded. Fed. R. Crim. P. 52(a).