**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jimmy Lee SMITH, Sr., Defendant–**
**Appellant.**

No. 99–6681.

United States Court of Appeals,
Sixth Circuit.

Nov. 19, 2001.

Before RYAN and BOGGS, Circuit Judges; and WILLIAMS, District Judge.*

PER CURIAM.

Jimmy Lee Smith, Sr., appeals the judgment of the United States District Court for the Western District of Tennessee sentencing him to twenty-four months of imprisonment, after Smith pled guilty to the interstate transportation of stolen goods, in violation of 18 U.S.C. § 2313. Smith argues that the district court did not adequately explain its decision to enhance his criminal history category, and therefore his sentence, by making an upward departure based on USSG § 4A1.3. That section permits a sentencing judge to depart from the "otherwise applicable sentencing range" upon a finding that the seriousness of a defendant's past criminal conduct was inadequately reflected by the standard calculation of his criminal history category under USSG §§ 4A1.2–3. In addition, Smith claims that the district court violated Federal Rule of Criminal Procedure 32(c)(1) by failing to make independent factual findings regarding his prior criminal conduct. For the reasons set forth below, we find each of Smith's arguments without merit and affirm the district court's sentence.

* The Honorable Glen M. Williams, United States District Judge for the Western District of Virginia, sitting by designation.

## I

In August 1997, the Auto Cargo Theft Task Force, an organization comprised of federal and state law enforcement officials in Tennessee, located a stolen Mack truck in West Memphis, Arkansas. The truck, loaded with cement culvert, had been stolen from a plumbing company in Memphis, Tennessee.

Members of the task force observed Smith meet two other men at the truck. After conversing and making a phone call together, one of the other men drove the stolen truck to Wheatley, Arkansas and Smith followed in a car. In Wheatley, Smith and his companions discovered that they were under surveillance and abandoned the stolen truck.

Six weeks later, an undercover officer with the task force purchased another stolen truck from one of Smith's colleagues. Smith accompanied his friend to the sale, and both were arrested immediately after the sale. Soon thereafter, Smith was indicted for transporting the first stolen truck from Tennessee to Arkansas. Smith pled guilty.

The probation officer's Presentence Report detailed Smith's extensive criminal history and calculated the number of criminal history points that should be assigned under the United States Sentencing Guidelines. The probation officer determined that a total of seven criminal history points should be assessed against Smith for his prior convictions. Seven points placed Smith in criminal history category IV. However, the probation officer also noted that Smith had five prior convictions for similar conduct for which no criminal history points were assigned due to the age of the convictions. See USSG § 4A1.2(e)(1)

(providing that convictions within "fifteen years of the defendant's commencement of the instant offense" be counted in the defendant's calculated criminal history). Additionally, the probation officer indicated that one of the counted convictions under-represented the criminal conduct underlying the conviction. If charged separately, the conduct would have constituted seven separate offenses. Accordingly, the probation officer recommended that the district court consider an upward departure from the guidelines sentence pursuant to USSG § 4A1.3, providing for departures when the standard criminal history categorization of a defendant inadequately reflects his actual criminal past.

On November 29, 1999, District Judge McCalla held a sentencing hearing for Smith. In that proceeding, the court accepted the probation officer's calculation of a base offense level of thirteen. The court then considered whether a departure from the guidelines sentencing range was warranted.

The primary question for the district court was the effect of Smith's criminal history on his ultimate sentence. The court agreed with the probation officer that seven criminal history points, and the corresponding criminal history category IV, under-represented Smith's criminal history. Pursuant to USSG § 4A1.3, the court determined that thirteen criminal history points, placing Smith in criminal history category VI, adequately represented Smith's criminal history. JA at 99–100. The intersection of criminal history category VI and offense level thirteen gave the court a sentencing range of 33–41 months, an increase from the category IV range of 24–30 months.

The district court also concluded, on the United States Attorney's recommendation, that Smith was entitled to a downward departure for his substantial assistance with the government's investigation pursuant to USSG § 5K1.1. Noting that Smith's cooperation had been "good," the court reduced the sentence suggested by the court's criminal history enhancement to 24 months of imprisonment.

Smith now appeals the court's sentence.

## II

Smith makes two arguments for reversing the district court's sentence. First, Smith argues that the court's explanation of its departure did not demonstrate that it considered intermediate enhancements or reasoned within the framework of the guidelines. Second, Smith asserts that the court failed to resolve controverted issues that underlay its sentence by making independent factual findings. We address each of these arguments separately.

A. The Sufficiency of the District Court's Reasoning for its Section 4A1.3 Departure

■ Smith argues that the court erred by departing upward by two criminal history categories for those convictions and acts not counted in the base criminal history calculation. Smith does not dispute the calculation of seven base criminal history points, placing him in criminal history category IV. According to Smith, the court's error was to enhance this base criminal history calculation to category VI, without considering category V.

The court's authority for departing upward was USSG § 4A1.3. Section 4A1.3 permits a sentencing court to depart from the "otherwise applicable guidelines range" if the criminal history category assigned "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." The guidelines do provide some guidance on the manner in which the sentencing court should deviate if it finds that the otherwise

applicable criminal history category is inadequate: "In considering a departure under this provision, the Commission intends that the court use, as a reference, the guidelines range for a defendant with a higher or lower criminal history category, as applicable." USSG § 4A1.3, p.s.

This court has elaborated on the manner in which sentencing courts must determine upward departures under USSG § 4A1.3. Specifically, this court has developed two information-forcing requirements, with the goal of prompting the sentencing court to provide a clear explanation of its decision. First, if a sentencing court departs upward from the defendant's calculated criminal history category, it must "articulate its reasons for departing from the guidelines in language relating to the guidelines." *United States v. Schultz*, 14 F.3d 1093, 1101 (6th Cir.1994). Second, when the court "departs beyond the next higher criminal history category, it must demonstrate either that it looked to the next higher criminal history category for guidance or that it found the sentence under the next higher criminal history category too lenient." *Id.* at 1102; *United States v. Feinman*, 930 F.2d 495, 501 (6th Cir.1991); *United States v. Kennedy*, 893 F.2d 825, 829 (6th Cir.1990).

These two "clear statement" or information-forcing requirements are designed "to standardize" the sentencing process, while leaving courts the substantive discretion to impose the sentence that they believe appropriate. *See Kennedy*, 893 F.2d at 828–29. The information that such explanations generate permits other courts to develop sensible and proportionate sentences and the Sentencing Commission to evaluate the actual considerations driving sentencing decisions under the guidelines. *See id.* at 828 (describing the "feedback" purpose of requiring explanations from sentencing courts).

Smith argues that the court failed at least the second explanatory requirement under our precedents, by skipping from his calculated criminal history category IV to category VI without even considering the intermediate step of departing upward to category V. Smith is correct that there is no mention of "Criminal History Category V" to be found in the district court's discussion. But the absence of such a mention is merely a matter of nomenclature, as the court explained its holding in terms of criminal history points rather than categories. The record indicates that the court started with Smith's calculated seven criminal history points (and criminal history category IV), considered adding only three criminal history points (for a total of ten and a criminal history category of V), found adding three simply too lenient, and decided that adding six points (for a total of thirteen and a criminal history category of VI) was more appropriate. The following literal transcript of the court's discussion demonstrates its sequential analysis in terms of points rather than categories:

> "In this case, we said the guideline range just isn't adequate. It would normally be a VI, just the person who has that much criminal experience, he has just been that involved and we could have said, well, you know, just looking at the material on pages 11 and 12 to add the equivalent of two other convictions, and to look back, at the history that precedes under certain circumstances, to look back at that. So let's say you had added three points for the earlier activity, because it is so closely related and three points for the understatement, that's six. Well, that give us a 13, and we're at— that where we are. Now, to be fair in this case, to have said 13, I mean, gosh, shouldn't you have taken those convictions in paragraph— in

pages 11 and 12 and just said, well, you know three, three, three, three— four— three, you know, end up with an additional twelve. I said I'm not going to do that. I don't want to overkill, we want to be conservative and cautious in the sense that we don't want to unduly penalize anybody, we want to be fair. *And so what I have done is to say, okay, there's more than enough on page 11 and 12 for us to readily see that three points just isn't enough for us to take into consideration that criminal conduct.* I mean it was one separate incidence and another separate incident, and another one and another one, and that could have been a much higher number. *I think it is appropriate to say adding six points is a very fair and understated approach, and, therefore, we would be at a 13, which puts us at a category VI, which puts as at a penalty range of 33 months to 41 months and that's where I'm starting."*

Transcript of Sentencing Hearing at 50– 51, JA at 99–100 (emphasis added).

We cannot find that the court's explanation of its upward departure was legally inadequate. More specifically, we will not scold the court for using the more precise measure of criminal history points in place of criminal history categories. The court explicitly considered adding just three criminal history points to Smith's calculated seven. Adding only three points would have totaled ten, and placed Smith in criminal history category V. By considering a criminal history point total of 10, we hold that the district court has demonstrated on the record that it considered the next higher criminal history category (Category V),

before assigning 13 points (Category VI). Furthermore, by determining that adding three points for a total of 10 "is just not enough to take into consideration [Smith's previously uncounted] criminal conduct," the court found that the next higher criminal history category was "too lenient." *See Schultz,* 14 F.3d at 1102, *Kennedy,* 893 F.2d at 829.

Smith also suggests that the sentencing court's explanation of its departure, beyond its utilization of the sequential approach, was inadequate, or at least, not in "language relating to the guidelines." According to Smith, the court's determination that categories IV and V[1] were "too lenient" was "conclusory." A conclusory statement regarding the inadequacy of lesser categories, Smith argues, is not legally sufficient.

Indeed, Smith is correct that a "conclusory" statement that a criminal history category is too lenient is not the "demonstration" of reasoned consideration required by our precedents. *See, e.g., United States v. Lassiter,* 929 F.2d 267, 271 (6th Cir.1991) ("A conclusory statement that the sentences imposed by criminal history categories III, IV or V are too lenient is not a 'demonstration' or reasoned explanation."); *United States v. Robison,* 904 F.2d 365, 372 (6th Cir.1990) ("A sentencing court must present more than a conclusory set of reasons for departure."). The reason behind our concern over excessively thin explanations is clear enough: such impoverished explanations do not serve the goal of our "clear statement" jurisprudence to provide transparent guideposts for ordered sentencing by courts and for reasoned policymaking by

---

**1.** The Appellant insists that the court did not even consider category V, much less find it too lenient. We, of course, have just held that the court did consider category V and did find it too lenient. For purposes of this discus- sion, we assume that the Appellant would have argued in the alternative that the determination, which it mistakenly argued to be absent, was at the very least conclusory.

the Sentencing Commission. *See Kennedy*, 893 F.2d at 829.

We find, however, that Judge McCalla's explanation of his upward departure in Smith's sentence was adequately detailed and "in language relating to the guidelines." First, the court found that the calculated seven points omitted several convictions that were formally too old to be included in the calculated criminal history. After specifically listing and describing those offenses, the court assigned three additional criminal history points for those convictions, "because they are so closely related." The court's reasoning here is framed in language relating to the guidelines, which explicitly encourages sentencing courts to consider an upward departure on the basis of a conviction not counted because of its age, if the conviction "is evidence of similar, or serious dissimilar, criminal conduct." USSG § 4A1.2, comment. (n.8). For the court, these older convictions constituted "a consistent history of ... interstate theft" and therefore warranted a three point upward departure for the inadequacy of Smith's calculated criminal history.

Second, the court found that one of Smith's counted convictions was an "understatement" of the criminal conduct underlying it. For the court, Smith's 1995 conviction for interstate theft really represented seven separate, specifically listed, thefts. JA at 97–98. The conviction also reflected Smith's amazingly eclectic tastes.[2] The court found that the three points assigned for his 1995 conviction did not adequately represent the gravity and diversity of the underlying conduct, and therefore specifically added another three criminal history points for the separate uncounted thefts collectively. JA at 100. Indeed, the court noted that it could add twelve points for the separate uncounted thefts, but would only add three.[3] Again, the court's departure for the conduct underlying the 1995 conviction was framed in the language of the Guidelines, which contemplates departures for a "consolidated sentence" representing a series of offenses. USSG § 4A1.3, p.s.

Although we confirm that reasoned explanation is necessary in departure decisions, the district court's explanation of the criminal history departure was adequate in this case. By specifically listing and even describing on the record the convictions and conduct undergirding the departure, severally assigning discrete numbers of criminal history points for the two classes of criminal history inadequacy that the court identified, and carefully framing his explanation in language relating to the guidelines, the court well surpassed our requirements for clear statement and reasoned explanation.

**B. The Adequacy of the District Court's Factual Findings under Federal Rule of Criminal Procedure 32(c)(1)**

■ Smith claims that the district court failed to make independent factual determinations regarding controverted matters, or to find specifically that such controverted matters will not effect sentencing, in violation of Federal Rule of Criminal Pro-

---

**2.** The 1995 jail term represented a consolidated sentence for separate thefts of Smuckers peanut butter, Budweiser beer, Xerex antifreeze, Packard Bell computers, Murray lawnmowers and various brands of automobile tires. *See* Presentence Report at 11–13, JA at 127–29.

**3.** *See* Record of Sentencing Hearing, JA at 100. The court specifically referenced conduct described at pages 11 and 12 of the Presentence Report. These pages contain the conduct underlying the 1995 conviction. *See* JA at 127–28. The court states that by taking into consideration that conduct, "you could end up with an additional twelve [points]."

cedure 32(c)(1). Rule 32(c)(1) provides in relevant part: "For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not effect, sentencing." Fed.R.Crim.P. 32(c)(1).

We have required "literal compliance" with Rule 32(c)(1) to "ensure that defendants are sentenced on the basis of accurate information." *United States v. Monus,* 128 F.3d 376, 396 (6th Cir.1997). When an issue is controverted, the rule requires the sentencing court to make independent factual findings resolving the controverted issue or to declare that the issue has no weight in sentencing. However, the rule is not triggered unless a matter is "controverted." *See* Fed. R.Crim.P. 32(c)(1). As this court has repeatedly made clear, a factual assertion in a presentence report to be relied on in sentencing is not "controverted" under the rule unless the defendant properly objects. *See, e.g., United States v. Fry,* 831 F.2d 664, 667–68 (6th Cir.1987).

We have elaborated on the elements of a defendant's objection that are required in order to make a matter "controverted" and thereby to trigger Rule 32(c)(1). In *United States v. Hurst,* 228 F.3d 751 (6th Cir. 2000), we held that when a defendant "did not even assert that the objected-to recommendations were based on false or unreliable information, and did not expressly bring them to the court's attention *during the sentencing hearing,* it can hardly be said that these matters were sufficiently 'controverted' to trigger the sentencing court's fact finding duty under Rule 32(c)(1)." *Id* at 760 (emphasis added).

In this case, we cannot find, and the parties have not directed us to, a relevant defendant's objection *in the record of the sentencing hearing.* Defendants and their counsel cannot silently listen to the sentencing court rely on factors that they believe in dispute and then "sandbag" that court on appeal by claiming that it failed to make specific factual findings. Our precedents make clear that we require such an objection, on the record, during the sentencing hearing to make a factual matter "controverted" for purposes of Rule 32(c)(1). *See Hurst,* 228 F.3d at 760; *United States v. Fry,* 831 F.2d 664, 667–68 (6th Cir.1987) (requiring that a defendant bring "alleged factual inaccuracies to the attention of the judge during the sentencing hearing"). We can find nothing in the record even remotely sufficient to satisfy our requirement.

Smith argues that he did object to assertions in the Presentence Report. On November 18, 1999, Smith did submit to the court a filing entitled "Position of Defendant with Respect to Sentencing Factors." The filing asserted in relevant part:

> "The Defendant disagrees with the 'factors that may warrant departure' outlined in sections 102 and 103. The Defendant feels that the criminal history calculations adequately cover these areas of concern by the probation officer."

Assuming, *arguendo,* that a defendant's written filing with the court could constitute an objection sufficient to make a matter "controverted," Smith's filing appears to fall well short of even our substantive requirements for a sufficient objection. In *Hurst,* we held that the defendant must assert in his objection that "the objected-to recommendations were based on false or unreliable information."[4] 228 F.3d at 760.

---

4. We note that there is some ambiguity in *Hurst* regarding whether the defendant must object *both* during the sentencing hearing *and* by asserting that the "objected to representations were based on false or unreliable information." Thus, we might better have said

Smith's objection to the departure recommendation fails to do this: he does not assert that the departure recommendation due to Smith's criminal history rested on inaccurate or unreliable information about his previous convictions. Indeed, his objection could most reasonably be read as applying only to the *legal* conclusion that the judge should make an upward departure based on Smith's uncalculated criminal history, taking the facts underlying that recommendation as given. Insofar as Smith's objection was to the ultimate determination to depart, the court appeared to make many and extensive findings regarding why Smith's calculated criminal history category was too lenient.

The court did not violate Federal Rule of Criminal Procedure 32(c)(1) in finding that Smith's calculated criminal history category was inadequate. In short, Smith's objection was simply insufficient to make any matter "controverted" such that the court's Rule 32(c)(1) fact-finding responsibilities would have been triggered. Smith did not object to the court's reliance on the probation officer's catalogue of his prior convictions during the sentencing hearing. Even if such an objection during the sentencing hearing is unnecessary, Smith did not assert in his earlier written objection that the list of convictions and acts in the presentence report was inaccurate or based on unreliable information, as our precedents require. Indeed, his objection really appears to be one not to the *factual* finding of his prior convictions and criminal acts, but to the *legal* conclusion that, given those factual findings, his calculated criminal history was inadequately reflective of his criminal past. It is not clear that Rule 32(c)(1) even applies to disputed legal matters. To the extent this legal

matter was controverted, the court made extensive and well reasoned findings to resolve it.

### III

There was no error in the court's applying an upward departure pursuant to USSG § 4A1.3, and we, therefore, AFFIRM the district court's sentence.

---

that a defendant, at the very least, must so assert in the absence of an oral objection during the sentencing hearing while the judge is relying on the information. In other

words, we leave for another day whether the objection requirements of *Hurst* are conjunctive, because the defendant in this case has failed them both.