**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles Edward WILLIAMS, Jr.,
Defendant–Appellant.**

No. 02–6509.

United States Court of Appeals,
Sixth Circuit.

Sept. 9, 2003.

**624**

Victor L. Ivy, Asst. U.S. Attorney, U.S. Attorney's Office, Jackson, TN, for Plaintiff-Appellee.

M. Dianne Smothers, Asst. FP Defender, Office of the Federal Public Defender for the Western District of Tennessee, Memphis, TN, for Defendant-Appellant.

Before MERRITT, MOORE, and GILMAN, Circuit Judges.

## ORDER

This is a direct appeal from a criminal judgment and commitment order. The parties have waived oral argument and, upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In 2002, Charles Edward Williams was indicted on four counts of drug, assault and firearm offenses. The district court eventually accepted Williams's conditional plea and found him guilty of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The court sentenced Williams to a 270 month term of imprisonment and a five year period of supervised release. This appeal followed.

The only issue for this court's review is whether the district court committed reversible error in denying Williams's motion to suppress evidence seized during an investigatory stop and encounter. This court reviews for clear error findings of fact made by a district court in ruling on a motion to suppress evidence; the court's legal conclusions are reviewed de novo. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir.1999). The evidence must be viewed in the light most likely to support the decision of the district court. *United States v. Heath*, 259 F.3d 522, 528 (6th Cir.2001). An examination of the record and law using the foregoing standards supports the district court's judgment to deny the motion to suppress evidence.

The facts underlying the appellate issue, taken in the light most likely to support the decision of the district court, are as follows: On February 9, 2002, Jackson [Tennessee] Police Officer Jimmie Reynolds was driving his marked patrol car when he received a radio call about a possible shooting. The substance of the bulletin was that an individual wearing black clothing might have been shot and then fled into a wooded area near the Ridgecrest subdivision of Jackson. Officer Reynolds proceeded to the wooded area identified in the bulletin and searched for the possible shooting victim. The officer there encountered a letter carrier for the United States Postal Service, Anthony Arnold, who denied having seen anyone matching the description. Officer Reynolds drove around until he saw defendant Williams exit the wooded area. Williams, dressed in black, was jogging out of the woods and sweating profusely.

Williams did not exhibit any visible signs of having been shot, but he had grass in his hair, his clothes were muddy, and he was wearing heavy shoes that were not designed for jogging. Officer Reynolds inquired of Williams if he was shot and Williams answered that he had not been shot. Nevertheless, because of Williams's unusual appearance and owing to the possibility that Williams might have been involved in the shooting, Officer Reynolds stopped his patrol car across Williams's path and initiated a conversation with Williams. Reynolds's intent was to obtain some identification from Williams and to ask the police dispatcher to match the identification with the possible shooting suspect.

Reynolds exited his patrol car and explained to Williams the purpose of the stop. The officer told Williams that he was not in trouble or under arrest and then he asked Williams for some identification. Reynolds described Williams's mien at that time as agitated or nervous. Williams gave Officer Reynolds a drivers license and, prior to using the radio to check on the identity of the shooting participants, Officer Reynolds informed Williams that he was going to conduct a "pat down" of Williams. Reynolds told Williams that the "pat down" was merely a precaution because of the possible shooting nearby. In response, Williams turned away from the direction indicated by Officer Reynolds and reached toward his waist. Officer Reynolds put his arms around Williams's waist, felt a gun in the waistband, and struggled for the gun with Williams. Postal employee Arnold approached the pair as they fought for the gun and Williams struck Arnold in the face. Reynolds and Williams finally separated and each reached for his weapon. Officer Reynolds fired first and hit Williams, who fell to the ground and remained there until help arrived. The arresting officers eventually found a handgun and seventy-two grams of crack cocaine on Williams. This version of the encounter and struggle was corroborated by Arnold.

Counsel for Williams moved to suppress the introduction into evidence of the handgun and the crack cocaine. The district court conducted an evidentiary hearing and concluded, in oral findings, that Officer Reynolds acted reasonably in making the initial investigatory stop and then attempting to conduct a "pat down" to preserve the status quo. Finally, the court concluded that the officer acted properly in reacting to Williams's movement toward the waistband of his trousers instead of complying with the request to submit to the "pat down." The court thus credited the testimony of Reynolds and Arnold completely· in denying the motion to suppress.

The issue presented for appellate review is whether the district court erred in denying the motion to suppress on the basis of the reasonableness of the initial stop, subsequent discussion and reaction to Williams moving his hands to his waistband. When "a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances." *United States v. Hurst,* 228 F.3d 751, 756–57 (2000) (quoting *United States v. Bentley,* 29 F.3d 1073, 1075 (6th Cir.1994)). These seizures have become known as *Terry* stops, after *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry,* however, did not address the reasonableness of the initial investigative detention; its holding addressed the reasonableness of a protective search that is not supported by probable cause. Nevertheless, the Supreme Court has held, subse-

quent to *Terry*, that "a policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed ... a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.... Typically this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.'" *United States v. Fountain*, 2 F.3d 656, 664 (6th Cir.1993) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (footnote omitted) (quoting *United States v. Brignoni–Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (internal citations omitted))).

The case at bar presents a textbook example of a permissible investigatory stop and attempted *Terry* search crediting, as this court must, the version of the facts favoring the district court's decision. The officer was specifically on the alert for a person dressed in black who may have been the victim of a shooting and who may have run into a wooded area. The officer saw a perspiring, disheveled person dressed in black running from the wooded area indicated and he decided to investigate further. The investigation took the form of "ask[ing] the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.'" *Fountain*, 2 F.3d at 664. There is no hint of any overreaching of the Fourth Amendment by the investigating officer in this regard. This appeal lacks merit.

Accordingly, the district court's judgment is affirmed.