**F I L E D**

**UNITED STATES COURT OF APPEALS**

**February 28, 2007**

**TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DARRYL WAYNE POTTER,

    Defendant - Appellant.

No. 06-8042
(D.C. No. 05-CR-236-J)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.[**]

    Defendant-Appellant Darryl Wayne Potter appeals from his conviction and sentence for possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). Mr. Potter was convicted following a jury trial on March 7, 2006. He was fined $1500 and sentenced to 135 months of imprisonment followed by 78 months of supervised release.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Mr. Potter filed his timely notice of appeal on June 2, 2006. In lieu of an appellate brief, Mr. Potter's appointed counsel forthrightly filed a motion to withdraw and brief in support thereof. See Anders v. California, 386 US. 738 (1967). In the Anders brief, Mr. Potter's counsel raised four issues: (1) the district court's denial of a motion to suppress certain evidence seized from Mr. Potter's vehicle and person, (2) the sufficiency of the evidence, (3) the constitutionality of Mr. Potter's sentence under Blakely v. Washington, 542 U.S. 296 (2004), and (4) the reasonableness of Mr. Potter's sentence under United States v. Booker, 543 U.S. 220 (2005). Mr. Potter subsequently filed a response to the Anders brief which argued ineffective assistance of counsel. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because every ground for appeal asserted by the defendant is frivolous, we dismiss the appeal and grant counsel's motion to withdraw. See United States v. Calderon, 428 F.3d 928, 930, 933 (10th Cir. 2005).

Background

On August 29, 2005, the manager of a truckstop near Fort Bridger, Wyoming alerted law enforcement that a man had shoplifted a radar detector valued at $249. The manager reported that the man left the truckstop driving a late 1970s model green Ford pickup with a camper shell on it. The manager also provided a description of the vehicle's license plate and general direction of

travel.

Wyoming Highway Patrol Trooper Michael Adams subsequently heard a "be-on-the-look-out"(BOLO) broadcasted from the local sheriff's department. The BOLO indicated that a blond-haired male, aged 30-40 years old, had allegedly shoplifted a radar detector from the truckstop and was traveling eastbound on Interstate 80 in a green Chevy pickup with a spray-painted black camper shell. Trooper Adams drove his cruiser to the top of a hill on Interstate 80 some distance east of the truckstop. There Trooper Adams waited, his cruiser not readily visible to oncoming traffic. After approximately seven minutes, Trooper Adams spotted a vehicle matching the description given on the BOLO traveling from the east. He clocked the green pickup speeding at 79 miles per hour in a 75 mile per hour zone.

Trooper Adams then pursued the pickup. Trooper Adams testified that after he and the pickup passed a semi-trailer, there was no traffic for approximately four hundred yards. Trooper Adams observed that the pickup was turquoise, and he attempted to read its license plate information. At this point, while Trooper Adams's cruiser was somewhat behind the pickup and in the left lane, he observed a white object fly out of the passenger side of the pickup. Trooper Adams assumed that the white object was the radar detector, and he carefully observed where it landed, noting its distance from an emergency cross-over. Trooper Adams specifically testified that there was no possibility that the

white object came from anywhere other than the pickup because there were no other vehicles near the pickup, except the semi-trailer that it had just passed.

Trooper Adams then turned on the cruiser's overhead lights and attempted to stop the turquoise pickup. The pickup continued east on Interstate 80 for another mile until it pulled over and stopped at the top of an exit ramp. Trooper Adams approached the pickup and ordered the driver out. Trooper Adams handcuffed the driver, whom he subsequently identified as Mr. Potter. Trooper Adams took Mr. Potter to the passenger side of his cruiser and patted him down for weapons. During the pat down, Trooper Adams felt an object he suspected might be a pocket knife in Mr. Potter's pocket. Trooper Adams subsequently removed a lighter and a small, plastic bottle that Trooper Adams identified as a "bullet"– a container used to dispense various controlled substances in powder form. Trooper Adams then secured Mr. Potter in the back of the cruiser. At this time, Trooper Adams told Mr. Potter that he was not under arrest.

Trooper Adams then searched the pickup where he found a radar detector under the driver's seat. He also found a set of digital scales in the glove box. Local sheriff's deputies and another trooper, Michael Felicetti soon arrived. While the deputies watched Mr. Potter, Troopers Adams and Felicetti drove back to where Trooper Adams observed the white object fly out of the pickup. The two troopers eventually found a white grocery bag lying down on the grass just past the shoulder of the highway, near the location where Trooper Adams thought the

white object had landed. Inside the grocery bag was a clear plastic food storage bag containing a white substance. Within two feet of the grocery bag were two packages wrapped in black electrical tape. The grocery bag and packages had only a light layer of dust on them, while other items in the grass were caked in mud and dirt.

Because the troopers did not have plastic gloves, they handled the items with their bare hands. In a field test, the white substance in the food storage bag tested positive for methamphetamine. The troopers then returned to the scene of the traffic stop and advised Mr. Potter that he was under arrest. Trooper Adams was then able to confirm that the radar detector found in the pickup was of the same make and model shoplifted from the truckstop. The troopers then conducted an inventory search of the pickup and transported Mr. Potter to a local jail. At the jail, while performing an inventory search of Mr. Potter, a sheriff's deputy recovered a plastic-wrapped chunk of methamphetamine from Mr. Potter's person.

Prior to trial, Mr. Potter moved to suppress all the items confiscated from the pickup and his person. Mr. Potter argued that the items were seized in violation of the Fourth Amendment because, when Trooper Adams first handcuffed Mr. Potter, he told Mr. Potter that he was not under arrest. Consequently, Mr. Potter argued, the search incident to arrest exception to the Fourth Amendment warrant requirement was not present when Trooper Adams first searched him and the pickup, nor was any other exception implicated by the

facts.

In its order denying the motion to suppress, the district court characterized the encounter between Trooper Adams and Mr. Potter as an investigative detention that turned into an arrest. The court found that the frisk of Mr. Potter was justified by probable cause and that the subsequent search of the pickup was a search incident to arrest. Additionally, the district court noted that the search of Mr. Potter's pickup could be justified under the automobile exception. See California v. Acevedo, 500 U.S. 565, 580-81 (1991). Finally, the district court noted that even if the search of the pickup was improper, the evidence in it would have been inevitably discovered during a later inventory search and therefore should not be suppressed. See Nix v. Williams, 467 U.S. 431, 444-48 (1984).

Before trial, Mr. Potter stipulated that a total quantity of 438.4 grams of methamphetamine had been recovered from the food storage bag and packages wrapped in electrical tape. He further stipulated that .79 grams of methamphetamine were seized from his pocket during the inventory search at the jail. At trial, there was expert testimony that this quantity of methamphetamine exceed that of a "user" quantity. No other drug paraphernalia was recovered other than the digital scales. While Mr. Potter's fingerprints were not found on the items containing methamphetamine, four latent prints were identified that did not match Mr. Potter. No effort was made to distinguish these prints as belonging to Troopers Adams and Felicitti, nor were the latent prints compared to those in

any state or federal database.

Included in the jury's verdict form was a special interrogatory regarding the amount of methamphetamine involved in the offense. The jury concluded that 438.4 grams of methamphetamine were involved.[1] This amount was used by the district court to establish a base offense level of 30, pursuant to U.S.S.G. §2D1.1(c)(5). There were no enhancements or reductions to this base offense level. Based on this offense level and a criminal history category of IV, the pre-sentence investigation report recommended a guideline range 135 to 168 months of imprisonment. The district court ultimately sentenced Mr. Potter to serve 135 months, the low-end of the guideline range.

## Discussion

I.    The Motion to Suppress

In reviewing the district court's denial of Mr. Potter's motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government. United States v. Torres-Castro, 470 F.3d 992, 994 n.1 (10th Cir. 2006). We accept the district court's factual findings unless they are clearly erroneous. United States v. Villagrana-Flores, 467 F.3d 1269, 1273 (10th Cir. 2006). Ultimately, the defendant must prove that the challenged

---

[1] This represents the total quantity of methamphetamine from all sources except the .79 grams found on Mr. Potter's person.

search was illegal under the Fourth Amendment, the ultimate determination of which is a question of reasonableness that we review de novo. Id.

In this case, the district court correctly found that the searches of Mr. Potter's person and the pickup were justified by numerous exceptions to the warrant requirement. Trooper Adams was initially justified in stopping Mr. Potter because he observed Mr. Potter speeding and littering. See United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). Whether Mr. Potter's detention is characterized as a Terry stop, a Terry stop that evolved into an arrest, or simply an arrest, we agree with the district court that, based on the description contained in the BOLO, Mr. Potter's throwing an object out of the pickup's window, and Mr. Potter's reluctance to yield, Trooper Adams possessed probable cause to suspect Mr. Potter of shoplifting and could have arrested him at any time. See Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001); Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1166 (10th Cir. 2003).

Because Trooper Adams could have arrested Mr. Potter at any time, and did eventually arrest him, the searches of both Mr. Potter and his pickup were justified as searches incident to an arrest. See New York v. Belton, 453 U.S. 454, 460 (1981). Additionally, because Trooper Adams had probable cause to believe that Mr. Potter used his pickup as a getaway vehicle for his theft of the radar detector, Trooper Adam's search of the pickup was also justified under the automobile exception to the warrant requirement. See Acevedo, 500 U.S. at 580.

Finally, even if the searches of Mr. Potter and the pickup were not justified at their onset, the evidence discovered would have been found during the subsequent inventory searches of both Mr. Potter and the pickup. Thus, the evidence discovered during the searches would be admissible under the inevitable discovery doctrine. See Nix, 467 U.S. at 444-48. Thus, the district court correctly denied Mr. Potter's motion to suppress.

II.     Sufficiency of the Evidence

"We review the record de novo to determine whether a reasonable jury could have found sufficient evidence to convict [Mr. Potter] beyond a reasonable doubt." United States v. Patterson, 472 F.3d 767, 778 (10th Cir. 2006). In so doing, we view all the evidence, including the reasonable inferences drawn from it, in a light most favorable to the government. Id. We do not weigh conflicting evidence or judge credibility. Id. We only ask, "whether the evidence, if believed, would establish each element of the crime." Id. (internal quotation omitted).

To sustain a conviction for possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1), the government had to prove that Mr. Potter: (1) possessed the controlled substance, (2) knew he possessed the controlled substance, and (3) intended to distribute or dispense the controlled substance. United States v. Montgomery, 468 F.3d 715, 719 (10th Cir. 2006). Mr. Potter never contested that the amount of substance recovered was approximately 440

- 9 -

grams of methamphetamine. Therefore, the government only had to prove that Mr. Potter knowingly and intentionally possessed the methamphetamine and that he intended to distribute it.

Mr. Potter essentially attacks the credibility of Trooper Adams and argues that there was insufficient evidence linking him to the wrapped packages of methamphetamine found on the shoulder of I-80. Yet, Trooper Adams testified that he saw a white object fly from Mr. Potter's pickup and that he carefully noted its location. Troopers Adams and Felicetti testified that when they walked back to the location where Trooper Adams observed the white object fall, they discovered a white plastic grocery bag, partially ripped open, containing a package of white substance, and two packages wrapped in black electrical tape laying nearby. Mr. Potter stipulated that the material found in the grocery bag and wrapped in tape was methamphetamine. Agent Matheson testified that the quantity of methamphetamine found was consistent with a quantity used for distribution.

There was sufficient evidence to infer that Mr. Potter possessed approximately 440 grams of methamphetamine with the intent to distribute. The jury apparently found Troopers Adams and Felicetti and Agent Matheson to be credible, and we will not disturb that determination on appeal. Valdez v. Bravo, 373 F.3d 1093, 1097 (10th Cir. 2004).

III.  The Constitutionality of Mr. Potter's Sentence

In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court reaffirmed its prior ruling in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In this case, the quantity of methamphetamine used to establish Mr. Potter's base offense level was specifically determined by a special jury interrogatory.  There were no enhancements to Mr. Potter's base offense level.  His sentence was increased due to prior criminal convictions, but prior convictions are exempted from the general rule set forth in Apprendi.  See id.

Mr. Potter also argues that his sentence was unreasonable under United States v. Booker, 543 U.S. 220 (2005).  We have held that a sentence within the recommended guideline range is presumptively reasonable.  See United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006).  Not only was Mr. Potter's sentence within the recommended guideline range, it was at the bottom of that range.  It also appears from the record that the district court fully considered the factors set forth in 18 U.S.C. § 3553(a), which we use as a benchmark for determining whether a sentence is reasonable.  See United States v. Gillespie, 452 F.3d 1183, 1192 (10th Cir. 2006).  The district court took full notice of the nature and circumstances of the offense, as well as Mr. Potter's history and characteristics.

It considered both mitigating and aggravating factors, including Mr. Potter's criminal history involving methamphetamine. Accordingly, we conclude that Mr. Potter's sentence was reasonable.

IV.    Ineffective Assistance of Counsel

In his pro se filing, Mr. Potter argues, on numerous grounds, that his appointed counsel provided ineffective assistance. We have frequently held that ineffective assistance of counsel claims should be brought in the first instance on collateral review under 28 U.S.C. § 2255. See, e.g., United States v. Brooks, 438 F.3d 1231, 1242 (10th Cir. 2006); Calderon, 428 F.3d at 931. The Supreme Court has held likewise. See Massaro v. United States, 538 U.S. 500, 504 (2003). Mr. Potter's claims in this regard are premature.

DISMISSED. Counsel's motion to withdraw is GRANTED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge