**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0430n.06

**No. 10-5567**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 28, 2011*

LEONARD GREEN, Clerk

CHRIS NEAL; HEATHER HARRIS,
for themselves and as next of kin and
father and mother of Lexus Neal;
LEXUS NEAL,

      **Plaintiffs-Appellees,**

v.

W.B. MELTON, Individually;
KELLY HULL, Individually,

      **Defendants-Appellants.**

_____/

**ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNEESSEE**

**BEFORE: SUHRHEINRICH, MOORE and COOK; Circuit Judges.**

      **SUHRHEINRICH, Circuit Judge.** Plaintiffs-Appellees, Heather Harris ("Harris"), Chris Neal ("Neal"), and Lexus Neal ("Lexus"), brought this § 1983 claim against Defendants-Appellants, W.B. Melton ("Melton") and Kelly Hull ("Hull"), in their individual capacities, alleging Fourth Amendment violations of excessive force, unreasonable seizure, and unreasonable search, allegedly sustained during a traffic stop. The district court denied Defendants' request for qualified immunity and they seek reversal of that decision. Because the force used was not objectively unreasonable and the officers had reasonable suspicion to search the vehicle, we **REVERSE**.

# I. BACKGROUND

On April 25, 2008, in Overton County, Tennessee, Deputy Sheriff Kelly Hull[1] and Sherriff W.B. Melton were riding together on patrol. Chief Deputy Frank Dial received a call reporting a person selling drugs from a blue car near Rickman, Tennessee, and relayed the report to Hull.

At approximately 8:45 p.m., Hull and Melton, patrolling near Rickman, spotted "a blue Cadillac that matched the description of the vehicle for which [they] had been on the lookout." Hull radioed the license plate number to a dispatcher for a check against the National Crime Information Center ("NCIC") database. The check indicated that the license plate was registered to a brown, Buick Riviera in Hamilton County, Tennessee, and that the license plate was expired. Hull activated his emergency lights to conduct an investigatory stop.

Activating the emergency lights also activated the video camera mounted to the patrol car. As a result, the rest of the stop is recorded on video.

After activating his lights, Hull saw an object thrown out of the driver's side window. Melton "heard something hit the windshield of the patrol car, as if the occupants of the vehicle had thrown something out." These events are not visible on video.

In response to Hull's lights, Harris, the driver of the blue Cadillac, turned into a driveway and stopped. Neal occupied the front passenger seat. Lexus, Harris and Neal's minor daughter, occupied the rear seat, where she was restrained in a child safety seat.

Hull approached the driver's side of the vehicle and Melton approached the passenger side. Hull requested Harris's license, registration, and proof of insurance and informed her why he had pulled her over. Hull then ran a check of the vehicle's registration; the registration matched the

---

[1]Hull is no longer with the Sheriff's Department; he retired in November 2008.

Cadillac and Harris's license was valid. Hull informed Harris that she should contact the County Clerk to resolve the database problem with her license plate. This process took approximately seven and half to eight minutes.

Hull then retrieved his police dog, Solomon, from his vehicle in order to conduct a "sweep" around the Cadillac to detect the presence of drugs. Walking Solomon around the Cadillac, Hull claims that Solomon twice "alerted" positively at the driver side door by sitting on his hind legs (in the video, Solomon, is visible during only one positive indication). In response, Hull asked Harris about the presence of drugs, to which she replied that she was unaware of any drugs in the vehicle. Hull requested Harris and Neal to exit the vehicle so that he and Melton could perform a search. Hull then returned Solomon to the police vehicle.

About thirty seconds later, Melton opened the passenger car door so that Neal could exit. Almost simultaneously, Solomon, who was not thoroughly secured in the police vehicle, trotted toward the Cadillac and entered the now-open front passenger car door. Melton initially reached for Solomon, however Neal was trying to exit the vehicle at the same time (Neal and Solomon were both crossing the door's threshold simultaneously), and Melton backed away so as to allow Neal to exit. Solomon fully entered the vehicle, and in the video he is visible in the back passenger seat where Lexus was sitting. Neal, still standing by the passenger door, protested the proximity of Solomon to Lexus. Hull circled the car to remove Solomon and approached the passenger door where Neal stood. As Hull approached the door, Melton seized Neal's left arm and escorted him away from the Cadillac back toward the police vehicle. The video indicates that as Melton grabbed Neal's arm, he may also have pulled a portion of Neal's t-shirt.

3

Hull successfully removed Solomon from the Cadillac. In total, Solomon was in the vehicle approximately fourteen seconds. Plaintiffs maintain that during this time Solomon "attacked" Lexus, resulting in a scratch to her.[2]

Neal alleges that Melton "slammed" him against the police vehicle. Although the angle of the video lens captures only the hood of the police vehicle, it is clear from the reflection in the hood and the elapsed time that Neal is not thrown against the vehicle. His hands remained visible until Melton points to the hood. Neal's hands then disappeared for approximately three seconds and reappeared with the contents of his pockets. Melton proceeded to inspect these items.[3] Melton appears to be standing at Neal's side.

Harris, meanwhile, retrieved Lexus from the back seat of the Cadillac. The vehicle was searched for approximately nine minutes. The search of the Cadillac produced no drugs and Plaintiffs were permitted to reenter their vehicle and depart. The total duration of the stop was approximately twenty-two minutes.

On July 17, 2008, Plaintiffs brought this § 1983 action in federal court asserting four claims: (1) unreasonable seizure when they were detained after Hull finished checking Harris's registration; (2) unreasonable search of the Cadillac based "on the pretext of a 'hit' by the dog"; (3) excessive force when Melton threw Neal against the vehicle; (4) excessive force when Solomon attacked

---

[2]No further details about the scratch exist in the record. While Lexus is visible in the video being held by her mother less than a minute after Solomon is removed from the car, no scratch is visible and the video does not show Lexus receiving any medical attention from her mother or the officers. The extent of the injury is not relevant, however, as this court has declined to adopt a *de minimis* injury requirement for excessive force claims under the Fourth Amendment. *See Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 406-408 (6th Cir. 2009).

[3]Plaintiffs do not claim that Neal's person was unreasonably searched.

Lexus. The district court denied Defendants' motion for summary judgment based on qualified immunity on all claims.

This appeal followed.

## II. ANALYSIS

### A. Standard Of Review & Jurisdiction

Defendants file this interlocutory appeal pursuant to 28 U.S.C. § 1291. An appellate court may hear an interlocutory appeal "for denials of summary judgment motions based on qualified immunity to the extent that the appeal raises issues of law." *Grawey v. Drury*, 567 F.3d 302, 310 (6th Cir. 2009) (citations omitted).

We review de novo whether the facts, viewed in the light most favorable to Plaintiffs, present any constitutional violations and if a violation exists, whether it involved a constitutional right clearly established at the time of the stop. *Id*.

### B. Merits

Stating a claim under 42 U.S.C. § 1983 requires a plaintiff to establish "the deprivation of a right secured by the Constitution or laws of the United States" that was "caused by a person acting under color of state law." *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007) (internal citations and quotation marks omitted). Qualified immunity may shield an officer from suit "'when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.'" *Id*. (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

To determine whether Defendants are entitled to qualified immunity, we conduct a two-part inquiry. First, we ask whether Defendants' conduct violated a constitutional right. *Saucier v. Katz*,

5

533 U.S. 194, 201 (2001).[4]  If there is no constitutional violation, Plaintiffs' § 1983 claims fail as a matter of law and Defendants are therefore entitled to summary judgment and do not need qualified immunity.  *Marvin*, 509 F.3d at 244 (citing *Scott v. Harris*, 550 U.S. 372, 386 (2007)).  If, though, a constitutional violation exists, the court then asks whether that right was clearly established in light of the specific circumstances of the case.  *Saucier*, 533 U.S. at 201.  When the law is not sufficiently clear such that a reasonable officer would be on notice that his conduct is clearly unlawful, qualified immunity is appropriate.  *Id*. at 202.[5]

### 1. Excessive Force Claims

Plaintiffs assert excessive force claims on behalf of Neal and on behalf of Lexus.  The Supreme Court has made clear that when law enforcement stops a vehicle, passengers in that vehicle are seized within the meaning of the Fourth Amendment and, thus, may challenge the constitutionality of the stop.  *Brendlin v. California*, 551 U.S. 249, 251 (2007); *see also United States v. Campbell*, 549 F.3d 364,371 (6th Cir. 2008) (acknowledging *Brendlin*).  Thus, although Harris was the driver of the blue Cadillac, both Neal and Lexus have standing to assert these claims.  *See Brendlin*, 551 U.S. at 259**.**

---

[4]While *Saucier* held that the sequence of this analysis, as it is portrayed here, was mandatory, the Court has since stated that conducting the analysis in this order, while beneficial, is not required. *Pearson v. Callahan*, 555 U.S. 223 (2009).

[5]A third step considering whether a "plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right" is used by some courts, but is redundant when the analysis considers whether the conduct was objectively unreasonable. *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009).

### a. Excessive Force Against Neal

Plaintiffs contend that Defendants used excessive force when Melton "threw [Neal] up against his car after he protested the dog jumping on his small child." On appeal, Hull and Melton argue that they should have been granted qualified immunity on this claim because the video establishes that Melton did not throw Neal against either vehicle during the stop. The district court did not explicitly address this claim.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio*. 392 U.S. 1, 22-27 (1968)). The determination of whether the force used is reasonable under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Id*. (citations and internal quotation marks omitted). In balancing these interests, the court should pay attention to the facts and circumstances of the particular case, including the following factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

The force used by Melton was reasonable. The video confirms that Melton took Neal's arm and escorted him away from the Cadillac as Hull approached to retrieve Solomon. Under the *Graham* factors this act was certainly not unreasonable: although Neal in no way resisted Defendants' directives or even Melton's use of force, it was not unreasonable for Melton to reduce any threat of harm by using a minimal amount of force to ensure that Neal did not impede Hull's

7

effort to remove Solomon from the vehicle. Escorting Neal back to the hood of the police cruiser was similarly reasonable. The video does not show Melton using any other force against Neal and certainly does not indicate that Melton threw him against a car. Although Neal continues to assert that he was "grabbed" and "[dragged] over" to the police vehicle "where he slammed up against it," the video record indicates that this is not the case. *See Scott*, 550 U.S. at 380-81 (holding that a court should rely on the video record when the plaintiff's version of the facts blatantly contradicted it). Absent any other assertions of force against Neal, Plaintiffs have failed to allege a constitutional violation. As a result, we dismiss this excessive force claim because it fails as a matter of law to state a constitutional violation and need not decide whether Defendants' actions merit qualified immunity. *See Marvin*, 509 F.3d at 244.

Moreover, it appears that Plaintiffs abandoned this claim during earlier proceedings. Plaintiffs' response to Defendants' concise statement of material facts admits that Melton did not throw Neal against the car or otherwise use any force against him. *See* R.E. 12, *Concise Statement of Material Facts of Defendants*, ¶17 ("As evidenced by the patrol car video from the stop, Defendant Melton did not throw him against his car of the patrol car or otherwise use any force against him."); R.E. 24, *Response to Defendants' Statement of Facts*, ¶17 ("Admitted."). Although both parties address this issue in their briefs, Plaintiffs have already conceded that Melton did not use excessive force against Neal.

### b. Excessive Force Against Lexus

Plaintiffs allege that Solomon attacked Lexus. The district court acknowledged a distinct claim, but did not separately analyze whether qualified immunity was warranted. On appeal,

8

Defendants argue that Solomon's entry into the car did not constitute excessive force, and even if it did, it was unintentional and accidental.

As discussed previously, under *Saucier*, Defendants' conduct must amount to a constitutional violation. Part of this showing is demonstrating that "the defendant acted knowingly or intentionally to violate his or her constitutional rights, such that mere negligence or recklessness is insufficient." *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). The Supreme Court has been explicit about this requirement in the Fourth Amendment context, instructing that a "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989).

As Plaintiffs themselves explain, Solomon, "unrestrained and unattended," "exited Defendants' car and entered Plaintiffs' automobile without protest from either Defendant." Negligence may be evident from Hull's failure to adequately secure Solomon and from Melton's failure to effectively grab Solomon as he entered the vehicle, but this is not the type of intentional or knowing contact required for a § 1983 claim. As a result, Plaintiffs have failed to state a § 1983 claim for excessive force and we dismiss this issue. *See generally Ahlers*, 188 F.3d at 374 (determining that plaintiffs' inability to "demonstrate knowing or intentional behavior" by the defendants "designed to violate [plaintiff's] constitutional rights" failed to state a constitutional claim that would preclude qualified immunity).

Our decision in *Dunigan v. Noble*, 390 F.3d 486 (6th Cir. 2004), supports this conclusion. In *Dunigan*, an officer brought a police dog into a home with the intention of seizing a suspect. A woman stumbled into the dog's defensive perimeter and the dog bit her. This court rejected her §1983 claim on the grounds that she had failed to allege a seizure cognizable under the Fourth

9

Amendment because the officer had not acted with intent. *Id*. at 493. Similarly, Hull and Melton did not "'through means intentionally applied'" use Solomon to seize Lexus or exert force upon her, even though their negligence allowed the dog to come into contact with her. *See id*. at 492 (quoting *Brower*, 489 U.S. at 597, for the proposition that the Fourth Amendment is only implicated when the government intentionally restricts freedom of movement); *see also Matheny v. Boatright*, 970 F.Supp 1039, 1046 (S.D. Ga. 1997) (holding that the mere presence of a police dog did not amount to a misuse of force); *Thomas v. Ivezaji,* No. 96-1775,1997 WL 720448 (6th Cir. 1997) (unpublished) (dismissing a § 1983 excessive force claim against an officer who had opened a door and unintentionally injured an individual standing behind it); *cf. Hansen v. City of St. Paul*, No. 06-1286, 2007 WL 4224052, at *3 (D. Minn. 2007) (unpublished) (holding that the accidental biting of a third party was not actionable under § 1983, even though in that case the officer had intentionally released the dog, because the dispositive inquiry under the Fourth Amendment was not whether the officer intended to release the police dog, but whether he intended to seize the injured party).

### 2. Unreasonable Seizure

Plaintiffs allege that Defendants violated their Fourth Amendment rights by detaining them after the vehicle's registration was confirmed. The district court determined that Defendants failed to "articulate any specific concrete facts" that would support the continued detention after the registration checked out and denied summary judgment. Defendants argue that they had reasonable suspicion to detain the vehicle for a canine sweep, so no Fourth Amendment violation occurred.

So long as an officer has probable cause to believe that a traffic violation occurred, the "resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Davis*,

10

430 F.3d 345, 352 (6th Cir. 2005). It is undisputed here that Defendants had probable cause to stop Plaintiffs. The question is whether they had reasonable suspicion for the continued detention.

Although the Supreme Court has held that a dog sniff, standing alone, does not violate the Fourth Amendment, *United States v. Place*, 462 U.S. 696 (1983), it must occur during a lawful traffic stop. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). Thus, we must determine whether Defendants had reasonable suspicion to further detain Plaintiffs in order to conduct a dog sniff because Solomon's sweep occurred after the completion of the traffic stop.

*Terry* applies to continued detentions. *See Davis*, 430 at 354. It allows an officer to continue to detain an individual briefly "for investigative purposes if the officer has a reasonable suspicion . . . that criminal activity has occurred or is about to occur." *Id*. We evaluate the constitutionality of a *Terry* stop in a two-party inquiry. First, we consider whether a proper basis for the stop exists, "'which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion.'" *Id*. at 354 (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)). If, under the totality of the circumstances, the court finds a proper basis for the continued detention, it then asks "'whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.'" *Id*. (quoting *Garza*, 10 F.3d at 1245). This second question requires the court to consider whether the continued detention is reasonable, "'that is, (1) was it sufficiently limited in time, and (2) were the investigative means used the least intrusive means reasonably available.'" *Id*. (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 825-26 (6th Cir. 2005)).

11

Reasonable suspicion is something more than a "mere hunch." *United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008). It exists when an officer has a "particularized and objective basis for suspecting the person of criminal activity based on specific and articulable facts . . . ." *Id.* (internal citations and quotation marks omitted).

Defendants maintain that they had reasonable suspicion to justify further detention of Plaintiffs. We agree. First, Plaintiffs' vehicle matched the description of the vehicle reported to be selling drugs. Hull stated that he and Melton observed a "blue Cadillac that matched the description of the vehicle for which we had been on the lookout" near the alleged drug selling location.[6] We have found reasonable suspicion where a stopped vehicle matched the "color and style" of a vehicle reportedly tied to criminal activity in the vicinity. In *United States v. Hurst*, a burglary victim reported seeking a "dark-colored Thunderbird" in his driveway shortly before discovering that a crime had occurred. *United States v. Hurst*, 228 F.3d 751, 755 (6th Cir. 2000). Shortly thereafter, a local law enforcement officer saw a vehicle matching this description "not far" from the location of the burglary. *Id.* The officer also observed that the front grill of the vehicle was missing and relayed the identifying information to the next county, which the vehicle was then approaching. *Id.* Upon entering the next county, the vehicle was observed by a county sheriff, who pulled it over. *Id.*

---

[6]In a Supplemental Affidavit submitted by Hull, he explains that the report received by police included the license plate number of the alleged drug vehicle, which was the same number on Harris's blue Cadillac plate. In his original affidavit he explains that the vehicles matched, but does not provide this detail. The district court rejected the Supplemental Affidavit on the ground that it contained facts known to Defendants at the time of the summary judgment ruling.

Whether the district court properly rejected the Supplemental Affidavit is outside the scope of this interlocutory appeal. The exact match of the license plates between the vehicle allegedly selling drugs and Harris's vehicle certainly strengthens a finding of reasonable suspicion. But even ignoring this detail, there is still support for reasonable suspicion in the original affidavit which averred that [the vehicle was in the same vicinity] and that it was a "blue Cadillac that matched the description" of the reported car.

12

Although the vehicle was actually a dark-blue Mercury Cougar, this court concluded that because a vehicle "roughly matching the appearance . . . in color and style was reportedly seen" at the scene of the burglary and then observed departing the vicinity of the burglary (where the officer noted the missing front grill), the sheriff had reasonable suspicion to stop a vehicle matching this description. *Id*. at 757. While the vehicle in *Hurst* was spotted shortly after the alleged criminal activity, and here the record does not reflect exactly how long between the report and the stop, *Hurst* supports a finding of reasonable suspicion because Harris's vehicle matched the description of the vehicle allegedly dealing drugs and was located in the same vicinity as the alleged criminal activity. *See generally Campbell*, 549 F.3d at 371 (finding reasonable suspicion when officers had a "particularized and objective basis for suspecting the particular person of criminal activity").

Additionally, and most importantly, Hull and Melton both averred that they sensed, by sight and sound respectively, that items were thrown from the Cadillac following activation of the police lights. This fact, which Plaintiffs do not deny, establishes the necessary reasonable suspicion. *See United States v. Moore*, 130 F. App'x 728, 734 (6th Cir. 2005) (disposing of marijuana blunt when confronted by police supported finding of reasonable suspicion); *United States v. Connally*, Nos. 91-6401/6440/6441, 1993 WL 8151, at *2 (6th Cir. 1993) (unpublished decision) (finding reasonable suspicion when, in a known drug trafficking area, officers observed a pedestrian throw something into a van, at which point the pedestrian walked away from police and the van pulled away); *United States v. Prior*, 941 F.2d 427 (6th Cir. 1991) (finding reasonable suspicion when an officer observed a man throwing material onto a roof during a drug sweep of a housing unit); *see also United States v. Potter*, 218 F. App'x 809, 814 (6th Cir. 2007) (finding probable cause when an officer spotted a vehicle that was the subject of a "be-on-the-lookout" broadcast, observed the occupant of the vehicle

13

throw something out the window, and found the suspect reluctant to yield to the officer); *cf. United States v. Patterson*, 340 F.3d 368 (6th Cir. 2003) (rejecting reasonable suspicion when officers, who were approaching a group, saw a member of the group throw something into nearby bushes, because the individual who disposed of the item was not the defendant). Plaintiffs complain that the disposed items are not visible in the video. But because Plaintiffs never deny that they threw any objects, there is no disputed fact here. Plaintiffs' reliance on *Scott v. Harris* is misplaced. *Scott* held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it," then a court may rely on a police video of the event as it considers qualified immunity. *Scott*, 550 U.S. at 380-81. As noted, Plaintiffs never directly disputed Defendants' account.

In sum, considering that the vehicle description matched that of the alleged drug vehicle, that Defendants found the vehicle near the location of the alleged drug dealing, and that Defendants sensed objects were thrown from the windows once Defendants indicated their intention to stop Plaintiffs, we find that Defendants had reasonable suspicion that Plaintiffs were involved in drug activity sufficient to justify their continued detention. *See Davis*, 430 F.3d at 345-55 (finding police had reasonable suspicion to continue to detain the defendant after the completion of a traffic stop based on articulable facts that the defendant's vehicle contained narcotics).

We next consider whether the detention was sufficiently limited in time and limited to the least intrusive means reasonably available. *See Davis*, 430 F.3d at 354. Hull had Solomon on the scene and, thus, was able to limit the additional time necessary to complete the sweep. In total it took him a little under a minute to retrieve Solomon from the vehicle and about another minute to complete the sweep. Further, using a drug-dog to walk around the perimeter of a vehicle is a

14

"minimally intrusive means of investigating whether the officers' suspicions that [the] vehicle contained narcotics were valid." *Davis*, 430 F.3d at 355. As a result, the detention was permissible under *Terry* and did not amount to a violation of the Fourth Amendment.

Plaintiffs fail to establish a constitutional violation and, thus, we need not address whether Defendants are in need of qualified immunity. *Marvin*, 509 F.3d at 244.

**3. Unreasonable Search**

Plaintiffs contend that Defendants violated Harris's Fourth Amendment rights when they "searched her automobile on the pretext of a 'hit' by the dog" because "such search was without probable cause." The district court focused on the lack of justification for anything past the initial traffic stop and denied Defendants summary judgment on this claim. Defendants assert that they are entitled to qualified immunity because Solomon's positive alert provided probable cause to search Harris's vehicle.

"A positive indication by a properly trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Diaz*, 25 F.3d 392, 393-94 (6th Cir. 1994). Once probable cause is established a vehicle search is permissible without a warrant under the automobile exception. *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (citing *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)).

Because Defendants possessed reasonable suspicion sufficient to detain Plaintiffs after the registration issue was resolved, permitting Solomon to conduct a sniff test of the vehicle did not occur outside of the time constitutionally permitted for the stop.[7] The sniff test resulted in at least

---

[7] The district court considered *sua sponte* whether Solomon was a properly trained police dog. On appeal, Defendants list Solomon's numerous qualifications. Because Plaintiffs do not challenge the qualifications, we decline to address the matter. *See* Fed. R. App. P. 28(b) (requiring

15

one positive alert on the driver side of the Cadillac.[8]  This alert established probable cause to search the Cadillac.

Again, Plaintiffs have failed to present a constitutional violation, and we dismiss their claim without reaching the question of qualified immunity.  *Marvin*, 509 F.3d at 244.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's denial of qualified immunity and **REMAND** for entry of judgment in favor of Defendants.

---

appellees' brief to contain their contentions and supporting reasoning).

[8]The alert is visible in the video, despite Plaintiffs' assertion to the contrary.  To the extent that their account contradicts the events portrayed on the video, the video serves as an accurate record upon which this court may rely.  *Scott*, 550 U.S. at 380-81.

**KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.**

I join Part II.B.1 of the majority opinion, concluding that summary judgment should be granted to the officers on the Plaintiffs' excessive-force claims. I dissent from Parts II.B.2 and II.B.3 of the majority's opinion because I believe that the facts viewed in the light most favorable to the Plaintiffs demonstrate that genuine issues of material fact remain regarding the reasonableness of the seizure and search. *See Ctr. for Bio-Ethical Reform, Inc., v. City of Springboro*, 477 F.3d 807, 825 (6th Cir. 2007).

Taking the facts in the light most favorable to the Plaintiffs, I believe that the officers lacked reasonable suspicion to detain the Plaintiffs after completion of the vehicle-registration check in order to conduct a canine sweep. In their response to the officers' statement of material facts, the Plaintiffs disputed the officers' assertion that something had been thrown from the Plaintiffs' vehicle. On the materials properly before us, therefore, the only undisputed "specific and articulable fact" that supported the continued detention was the officers' observation that the Plaintiffs' vehicle was blue. The officers cannot show reasonable suspicion based only on the matching color of the vehicle. The stop in *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000), in contrast, was supported by numerous specific details.

Even if the officers had possessed reasonable suspicion for the continued detention, I do not believe that the officers are entitled to summary judgment on the claim that they conducted an unreasonable search. Probable cause for the vehicle search turned on whether the dog indicated the presence of a controlled substance in the Plaintiffs' car. It is not obvious from the videotape that the dog alerted. There is therefore a genuine issue of material fact precluding summary judgment. For these reasons, I respectfully dissent from Parts II.B.2 and II.B.3 of the majority's opinion.

17